CHARLES ALEXANDER, JR., APPELLANT, V. J.D. WAREHOUSE, DOING BUSINESS AS PARK TERRACE APARTMENTS, APPELLEE.

568 N.W.2d 892

Filed October 3, 1997.    No. S-95-1295.

Randall J. Shanks and Laura L. Patterman, of Shanks Law Firm, for appellant.

Betty L. Egan, of Walentine O'Toole McQuillan & Gordon, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

The appellant dove off a diving board into the Park Terrace Apartments swimming pool and injured his neck. The district court for Sarpy County, Nebraska, granted a directed verdict in favor of the appellee. Pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court, we, on our own motion, removed the matter to our docket. We now affirm.

## BACKGROUND

On July 12, 1992, the appellant, Charles Alexander, Jr., was injured when he dove off a diving board and struck his head on the bottom of a swimming pool. The pool was owned by J.D. Warehouse, doing business as Park Terrace Apartments (Park Terrace), at the time of the incident. Alexander had been visiting a resident of Park Terrace when the accident occurred. Alexander was taken in an ambulance by rescue personnel to Midlands Hospital and remained there for 5 days.

The Park Terrace swimming pool was constructed in 1968. The diving board was attached to the deepest end of the pool, which was 8 feet deep. Nebraska's Department of Health evaluates the Park Terrace swimming pool on a yearly basis. These evaluations, however, do not include an examination of any diving boards attached to pools. Park Terrace had received a permit to operate the pool for 1992. The Department of Health's "Standards for Swimming Pool Design," promulgated in 1979, provide that for a diving board of the type present at the Park Terrace swimming pool, the minimum depth of the pool needs to be 8 feet 6 inches. The Department of Health's standards also provide, inter alia:

## BASIC CONSIDERATIONS

Swimming pools constructed prior to January 1, 1970, which do not fully comply with these Rules and Regulations in regard to design and construction may be continued in use for such period as the Health Department may authorize if the water quality, operation, and maintenance of such swimming pools comply with these Rules and Regulations.

Alexander filed an amended petition against Park Terrace on June 3, 1994, seeking to recover damages as a result of permanent injuries arising out of the incident. Alexander alleged that he suffers from recurring neck pain and its accompanying limitations. Alexander alleged that Park Terrace was negligent in allowing persons such as Alexander to use the diving board or failing to remove the diving board when Park Terrace knew or should have known that the pool was of insufficient depth to allow people to safely use the diving board because (1) Park Terrace's manager, Linda Cuomo, saw a television documentary

on diving accidents resulting from improper pool floor curvature, (2) the Department of Health had enacted pool standards determining the proper pool depth, and (3) the excluded testimony of Mike Croushorn, a real estate property manager, was evidence of the industry standard regarding apartment complex pools with attached diving boards. Park Terrace denied that it was negligent and alleged that the accident and injuries to Alexander were caused by his own negligence and contributory negligence. Park Terrace then filed a motion for summary judgment which was overruled.

The case was tried to a jury in November 1995. At the close of Alexander's evidence, Park Terrace moved for a directed verdict. Park Terrace asserted that there was no evidence of hidden danger or peril which would give rise to a duty to warn and that if such peril existed, it was unknown or unobservable by Park Terrace. On November 7, the motion for directed verdict was granted, dismissing the case. From this order, Alexander appeals.

## ASSIGNMENTS OF ERROR

Alexander asserts that the district court erred in directing a verdict for Park Terrace because (1) circumstantial evidence existed in the record upon which a reasonable jury could have imputed Park Terrace with knowledge of the dangerous propensities of the diving board attached to the Park Terrace pool and (2) Park Terrace could be charged with the knowledge of the pool standards as enacted by the Department of Health. Alexander further asserts that the district court erred in finding the testimony of Croushorn irrelevant and excluding it from evidence.

## STANDARD OF REVIEW

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996). The party against whom a verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be

drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Hoover v. Burlington Northern RR. Co., supra; Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996); *Reavis v. Slominski, supra.*

On appeal from an order of a trial court dismissing an action at the close of the plaintiff's evidence, an appellate court must accept the plaintiff's evidence as true, together with reasonable conclusions deducible from that evidence. *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995).

## ANALYSIS

We note that *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), abrogates the classifications of invitee and licensee in favor of a standard of reasonable care for all those lawfully on the premises of another. Our rule in *Heins* is prospective in application and thus inapplicable to the instant case.

### STATUS AS LICENSEE

A licensee is defined as a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor. *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996); *Blackbird v. SDB Investments*, 249 Neb. 13, 541 N.W.2d 25 (1995). A social guest is a licensee. *Blackbird v. SDB Investments, supra.* Because Alexander was visiting a resident of the complex at the time of the accident, he is clearly a social guest and therefore a licensee.

### DUTY OWED TO LICENSEE

An owner or occupant of a premises owes only the duty to refrain from injuring a licensee by willful or wanton negligence or designed injury, or to warn him or her as a licensee of a hidden danger or peril known to the owner or occupant but unknown or unobservable by the licensee, who is required to exercise ordinary care. *Young v. Eriksen Constr. Co., supra; Blackbird v. SDB Investments, supra.* To constitute willful neg-

ligence, the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury. *Young v. Eriksen Constr. Co., supra; Wiles v. Metzger,* 238 Neb. 943, 473 N.W.2d 113 (1991); *Guenther v. Allgire,* 228 Neb. 425, 422 N.W.2d 782 (1988).

There is no evidence in the record that Park Terrace did not refrain from injuring Alexander by willful or wanton negligence or designed injury. Therefore, the pivotal issue in the present case is whether Park Terrace failed to warn Alexander of a hidden danger or peril *known* to it but unknown to Alexander in his exercise of ordinary care. Our inquiry, then, focuses on a determination of whether Park Terrace had actual knowledge of the dangerous propensities of the diving board attached to the Park Terrace pool.

Alexander alleges that evidence of the Department of Health's standards is circumstantial evidence of knowledge which should be imputed to Park Terrace. Alexander argues that Park Terrace knew or had notice of the dangerous condition regarding the depth of the pool because the standards regulating pool depth and diving boards were filed with the Secretary of State of Nebraska. The Department of Health is an administrative agency of Nebraska. Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. *Val-Pak of Omaha v. Department of Revenue,* 249 Neb. 776, 545 N.W.2d 447 (1996); *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue,* 248 Neb. 518, 537 N.W.2d 312 (1995); *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.,* 246 Neb. 726, 523 N.W.2d 499 (1994). Therefore, Alexander argues, this regulation put Park Terrace on notice of the dangerous propensities of the diving board, and Park Terrace's ignorance of the law is no excuse. See, *Haman v. Marsh,* 237 Neb. 699, 467 N.W.2d 836 (1991); *State ex rel. Nebraska State Bar Assn. v. Hollstein,* 202 Neb. 40, 274 N.W.2d 508 (1979).

Alexander further argues that circumstantial evidence of Park Terrace's knowledge of the inherent danger of the diving board was provided by the deposition testimony of Cuomo, an agent

of Park Terrace. Cuomo testified that several years ago she had seen a television program regarding the curvature of pool floors and how people had bumped their heads on them.

Park Terrace asserts that there was no evidence of any hidden danger or peril known to them that would give rise to a duty to warn and that if such a danger did exist, it was unknown or unobservable. With regard to Alexander's argument regarding notice of the pool standards, Park Terrace states that the standards themselves exempt pools constructed prior to 1970 from the design and construction standards of the rules and regulations provided the water quality, operation, and maintenance of the pool comply, and that the permit issued by the Department of Health indicates such compliance and authorization for continued use. With regard to Cuomo's testimony, Park Terrace argues that knowledge cannot be imputed because the program Cuomo watched had dealt with pool curvature, not depth. Further, Cuomo testified that she did not even remember the documentary until after Alexander's accident occurred.

Construing the evidence in a light most favorable to Alexander, we conclude that the district court did not err in granting Park Terrace's motion for directed verdict. Put simply, there is not enough evidence from which reasonable minds could draw more than one conclusion as to Park Terrace's actual knowledge of the danger of the diving board. The record does not contain any direct evidence of actual knowledge on the part of Park Terrace. Alexander, however, alleges that the record does contain circumstantial evidence of Park Terrace's knowledge. We disagree.

First, Cuomo's testimony with regard to the television documentary does not give rise to the inference that she, and therefore Park Terrace, should have known about the dangerous propensities of the diving board in connection with the depth of the pool. Cuomo testified that not only was the program about curvature, and not depth of swimming pools, but also that she did not remember the program until after the accident. This testimony does not reflect or suggest actual knowledge.

Second, the regulations that Alexander cites as circumstantial evidence of Park Terrace's knowledge provide an exemption from the standards for pools built before 1970, as long as they

meet certain requirements. Because Park Terrace met these requirements and received a permit to operate the pool, it was not in violation of the standards. Even if the standards are evidence of what Park Terrace "should have known," the applicable standard is actual knowledge. The standards do not, therefore, act as evidence of actual knowledge.

Finally, we turn to Alexander's contention that the testimony of Croushorn should not have been excluded from evidence on the basis of relevancy. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. *Benzel v. Keller Indus.,* ante p. 20, 567 N.W.2d 552 (1997); *Washa v. Miller,* 249 Neb. 941, 546 N.W.2d 813 (1996); *Coppi v. West Am. Ins. Co.,* 247 Neb. 1, 524 N.W.2d 804 (1994); *Moore v. State,* 245 Neb. 735, 515 N.W.2d 423 (1994).

The district court did not allow Croushorn's testimony to be admitted into evidence. We agree with this decision. Croushorn worked for Providence Management Corporation, which took over the management of Park Terrace on November 1, 1993. Croushorn did not work for Park Terrace until approximately 1½ years after the incident. Therefore, any knowledge possessed by him is not imputable to Park Terrace. Alexander argues that this testimony should be admitted to show the industry standard at the time of the accident. Croushorn's testimony, however, makes only vague references to "liability" and various insurance company recommendations that Providence Management Corporation remove its diving boards. This testimony is not relevant to the depth of the pool at issue or depth requirements of pools in general.

## CONCLUSION

Giving Alexander the benefit of every inference which can reasonably be drawn from the evidence, we agree with the district court's ruling that there is not enough evidence from which reasonable minds could draw more than one conclusion as to the issue of Park Terrace's knowledge. The district court also

properly excluded the testimony of Croushorn. The judgment of the district court is therefore affirmed.

AFFIRMED.