JEAN SCHMIDT, AS GUARDIAN AND NEXT BEST FRIEND OF PATRICIA SCHMIDT, A MINOR CHILD, APPELLANT, V. STATE OF NEBRASKA, DEPARTMENT OF SOCIAL SERVICES, APPELLEE.

586 N.W. 2d 148

Filed November 13, 1998.    No. S-97-302.

Robert R. Otte and Joseph E. Dalton, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The appellant, Jean Schmidt, and her husband, Richard Schmidt, adopted a child, Patricia Schmidt, without applying for government adoption assistance. Seven years after the adoption was finalized, the appellant, on behalf of the child, requested appellee, the then Nebraska Department of Social Services (DSS), to find the child eligible for federal adoption

assistance, due to her medical conditions. The DSS acting director, Gerry Oligmueller (the director), determined the child was not eligible for assistance and denied an agency review of his decision. The appellant filed an appeal with the Lancaster County District Court, which upheld DSS' denial of eligibility. The appellant timely appealed. We find that DSS' denial was invalid for failure to comply with statutory and regulatory procedure and that the district court and this court lack jurisdiction to review the merits of the appellant's claims. As a result, we vacate the district court's order and remand the cause with directions to dismiss.

## BACKGROUND

The child was born on September 16, 1986. Two months later, she was treated for first- and second-degree burns on her inner thighs at St. Joseph Hospital in Omaha, Nebraska. She was released into foster care after being treated, and the Douglas County Separate Juvenile Court made the child a ward of DSS. On September 1, 1987, both of the child's birth parents relinquished their parental rights. On the same day, the juvenile court placed the child in the custody of the Nebraska Children's Home Society (NCHS) and relieved DSS of all responsibility.

In October 1987, NCHS placed the child with the appellant and her husband. Medical information the appellant received regarding the child's background was basically limited to her measurements at birth, dates she learned to sit and crawl, and the fact that "[the child] does get a rash from disposable diapers." The appellant was told at placement that the child "seemed hyperactive," but representatives of NCHS told her the condition would improve with a stable environment. The child's hyperactive condition appeared to improve between the time of placement and the time the adoption was finalized. No one from either NCHS or DSS informed the appellant about existing federal or state adoption assistance programs prior to the adoption's being finalized, and the appellant was not independently aware of the assistance programs. The appellant did not apply for any government assistance prior to finalization of the adoption.

The child's behavioral development was slow. Her allergies, hyperactivity, and behavioral problems led the appellant to quit

her full-time job in 1991 to care full time for the child. The child was diagnosed with reactive attachment disorder in 1992. She received 2 months of inpatient therapy and continues to receive therapy for that disorder. She was diagnosed with a seizure disorder in 1992, which continues to cause her sleep difficulties. She was diagnosed with attention deficit hyperactivity disorder in 1993. The appellant stated that by May 1995, the expenses incurred caring for the child depleted her and her husband's assets. The appellant stated that they cannot afford to enroll the child in the special school that the child's therapists have recommended.

By September 1994, the appellant confirmed through St. Joseph Hospital records, DSS records, and NCHS personnel that the child was likely neglected and possibly abused by her biological mother, that her biological mother admitted to consuming alcohol during the first trimester of pregnancy, and that her biological mother had been diagnosed with residual schizophrenia. Medical sources in the record state that the child is about 10 times more likely than a member of the general population to develop schizophrenia in her adolescence or adulthood because of her biological mother's schizophrenia.

In a letter to DSS dated May 9, 1995, the appellant requested "a fair hearing to determine [the child's] eligibility for Title IV-E adoption assistance." Title IV-E of the Social Security Act is a federal adoption assistance program administered in Nebraska by DSS. See 42 U.S.C. § 670 et seq. (1994); Neb. Rev. Stat. § 43-117.01 (Reissue 1993). DSS scheduled a hearing and docketed it as "In the Matter of the Appeal of Richard and Jean Schmidt, on Behalf of Patricia Schmidt."

At the hearing, DSS asserted that the appellant could not receive assistance because (1) state law and DSS regulations provided for assistance only for children who were wards of DSS at the time adoption was finalized, which the child was not; (2) DSS regulations required the adoption assistance agreement be completed before the adoption was finalized; and (3) DSS regulations required an assessment at the time of adoption of whether the child was a hard-to-place child with special needs. The appellant contended that (1) state law and DSS regulations in 1988 that restricted benefits to wards of DSS were in

violation of federal law and (2) even though she and her husband did not apply for adoption assistance before the adoption was finalized, extenuating circumstances exist to permit consideration of the child's eligibility, specifically, because they were not informed of the adoption assistance program prior to the adoption and because they were not told about the child's and her biological mother's medical histories.

In his order, the director held that the child was not eligible for title IV-E adoption assistance because (1) she was not a ward of DSS when her adoption was finalized, as required by 474 Neb. Admin. Code, ch. 5, § 023.07 (1983) and (2) nothing in the record indicated that at the time of adoption, the child had a handicapping condition requiring a subsidy. The director further held that "there are no extenuating circumstances in this case whereby the Nebraska Department of Social Services has to provide a hearing for the Schmidts in regard to their daughter's eligibility for Adoption Assistance." The director held that the federal agency interpretations the appellant presented to support her extenuating-circumstances arguments did not apply, because the interpretations applied to reconsiderations for assistance and "[a]s no decision was ever made by the Nebraska Department of Social Services in regard to [the child's] eligibility for subsidized adoption, there can be no reconsideration of an action that never took place." DSS general counsel Michael Rumbaugh wrote a letter to the appellant with the director's order enclosed, stating, "This Finding and Order constitutes the final administrative decision on your case."

The appellant filed a proceeding in the district court for Lancaster County, demanding reversal of the director's order. The district court upheld the director's order. The district court held, inter alia, that (1) the child was never made a ward of the State of Nebraska; (2) the child failed to meet the requirement of 474 Neb. Admin. Code, ch. 4, § 021.01C2a ¶2c (1991) (current version at 479 Neb. Admin. Code, ch. 8, § 001.03B1 ¶1d (1995)), because at the time of the hearing she was not a ward of a private nonprofit agency licensed in Nebraska to place children for the purpose of adoption; (3) the child failed to meet the requirements of 474 Neb. Admin. Code, ch. 4, §§ 021.01C2a ¶2a and 021.01C2b (1991) (current version at 479 Neb. Admin.

Code, ch. 8, §§ 001.03B1 ¶1a and 001.03B2 (1995)), which require for assistance eligibility that a child cannot be adopted without subsidy, because the child was in fact adopted without a subsidy; (4) "there were no previous requests or denials entitling Plaintiffs to a fair hearing"; and (5) "there were no extenuating circumstances that would allow Plaintiff's [sic] a fair hearing."

## ASSIGNMENTS OF ERROR

The appellant assigns that the district court erred in finding that (1) the child was at no time made a ward of the State; (2) the child failed to meet the requirement of 474 Neb. Admin. Code, ch. 4, § 021.01C2a ¶2c; (3) the child does not meet the criteria for adoption subsidy set forth in 474 Neb. Admin. Code, ch. 4, §§ 021.01C2a ¶2a and 021.01C2b; (4) there were no extenuating circumstances that would allow the appellant a fair hearing; and (5) the child is not now eligible under title IV-E for adoption assistance.

## SCOPE OF REVIEW

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Bonge v. County of Madison*, 253 Neb. 903, 573 N.W.2d 448 (1998). To the extent the interpretation of statutes and regulations is involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997).

## ANALYSIS

Notwithstanding that the parties have not raised the issue of jurisdiction, this court has a duty to raise and determine the issue of jurisdiction sua sponte, which we now do. See, *Bonge v. County of Madison, supra*; *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). The record indicates that DSS disposed of the appellant's claims in a manner contrary to the express procedure provided in DSS' own regulations and contrary to the procedure required by federal statutes and federal regulations.

First, both the director and the district court expressly found that the appellant had made no application for assistance and

that DSS had not denied assistance prior to the appellant's May 9, 1995, request for a fair hearing. The record supports that finding. Despite that fact, DSS granted and held a hearing, after which the director determined the child's ineligibility for title IV-E adoption assistance.

DSS has an explicit procedure on how the agency is to initially determine eligibility for adoption assistance. This procedure was in effect at the time the appellant requested a fair hearing. (Regarding procedure, the applicable rules are those that were in effect at the time of the appellant's request for the agency hearing and when the hearing was held. *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); *Durousseau v. Nebraska State Racing Commission*, 194 Neb. 288, 231 N.W.2d 566 (1975)). To determine a child's eligibility for title IV-E adoption assistance, specific forms need to be completed and forwarded to DSS' adoption specialist. 474 Neb. Admin. Code, ch. 4, § 021.01C2a ¶1 (1991) (current version at 479 Neb. Admin. Code, ch. 8, § 001.03B1a (1995)). The adoption specialist determines whether the child was eligible for assistance based upon the information provided and pertinent substantive guidelines within federal and state statutes and regulations. *Id.* If the adoption specialist denies eligibility, *then* the applicant has a right to a fair hearing in which DSS' director reviews the initial denial. 465 Neb. Admin. Code, ch. 2, § 001.02 (1984) (readopted without amendment § 001.02 (1995)). The record is clear that this process, the proper procedure, was not used to determine the child's eligibility.

Second, DSS simultaneously made both an initial and a final determination of the child's eligibility for assistance. As stated, there was no denial of eligibility prior to the hearing that was held. The director stated in his order that the hearing that was held was not a reconsideration. The order was not only the initial DSS determination of the child's eligibility, but also the final DSS determination. By regulation, the DSS director's finding and order after a hearing must be the final agency decision. 465 Neb. Admin. Code, ch. 2, §§ 006.03A and 006.03D (1984) (current version at § 6-008.02 through 6-008.07 (1995)). This was confirmed both by the order in which he purported to deny the appellant a fair hearing and in the letter to the appellant

from DSS' general counsel. However, the regulations provide that every applicant for any program that DSS administers has the *right* to *appeal* to DSS for a fair hearing. 465 Neb. Admin. Code, ch. 2, § 001 ¶11 (1984). Specifically, "[e]very applicant for or recipient of assistance or services provided through [DSS] has the right to appeal any action, inaction, or failure to act with reasonable promptness with regard to the assistance or services." 465 Neb. Admin. Code, ch. 2, § 001.02 (1984) (re-adopted without amendment § 001.02 (1995)). Obviously, one cannot appeal a determination to the director when the director was the person who made the initial determination.

Additionally, federal statutes and federal regulations governing title IV-E adoption assistance also require the states to provide an administrative appeal. Title 42 of the U.S. Code requires states to provide "for granting an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to this part is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 671(a)(12) (1994). Title 45 C.F.R. § 205.10(a)(5) (1992), made applicable to this program by 45 C.F.R. § 1355.30(k) (1993), amended by 61 Fed. Reg. 58654 (1996), repeats the fair hearing appeal requirement at the agency level. Additionally, at the time the director issued his order, federal statute provided that the denial of the fair hearing right in 42 U.S.C. § 671(a)(12) was grounds for the U.S. Department of Health and Human Services to halt or reduce its payment obligations to the state. 42 U.S.C. § 671(b) (1988), *amended by* act Oct. 31, 1994 (effective Oct. 1, 1995), § 203(c)(2).

DSS regulations do not provide the authority to initially determine eligibility at a hearing before the director. DSS regulations and federal law do not provide DSS the authority to simultaneously make both an initial and a final determination of an applicant's eligibility for title IV-E adoption assistance and, implicit within that, do not provide the director the authority to deny a fair hearing.

Having found that DSS did not follow proper procedure in determining the appellant's claim, the issue is whether DSS' order in this case is nonetheless valid. We conclude it is not valid.

Properly adopted and filed agency regulations have the effect of statutory law. *Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997); *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996). Regulations bind the agency that promulgated them just as they bind individual citizens, even if the adoption of the regulations was discretionary. See, *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S. Ct. 499, 98 L. Ed. 2d 681 (1954); *Douglas County Welfare Administration v. Parks*, 204 Neb. 570, 284 N.W.2d 10 (1979); *Johnson v. Nebraska Environmental Control Council*, 2 Neb. App. 263, 509 N.W.2d 21 (1993). Regulations governing procedure are just as binding upon both the agency which enacts them and the public, "and the agency does not, as a general rule, have the discretion to waive, suspend, or disregard, in a particular case, a validly adopted rule so long as such rule remains in force." *Douglas County Welfare Administration v. Parks*, 204 Neb. at 572, 284 N.W.2d at 11-12. "To be valid, the action of the agency must conform to its rules which are in effect at the time the action is taken . . . ." *Id.* at 572, 284 N.W.2d at 12. See, also, *Service v. Dulles*, 354 U.S. 363, 77 S. Ct. 1152, 1 L. Ed. 2d 1403 (1957) (holding that although enactment of pertinent regulations was at agency's discretion, agency's action was invalid when it proceeded without regard to regulations); *Mine Reclamation Corp. v. F.E.R.C.*, 30 F.3d 1519, 1524 (D.C. Cir. 1994) (stating that " ' "an agency's failure to follow its own regulations is fatal to the deviant action" ' ").

This court in *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994), created an exception to the general rule that an agency may not waive application of its own rules and regulations. This court held that if a rule is "but an aid to help the [agency] in its decision," rather than one that "confer[s] a procedural benefit upon a party," then the agency's action may depart from that rule. *Id.* at 97, 511 N.W.2d at 515. In *In re Application of Jantzen*, this court held that an agency could waive a rule that required a party to file a response to a protest within a certain time, given that the plaintiff had the burden of production, even without an answer's being filed, and thus that the regulation conferred no procedural benefit upon the plaintiff.

The *In re Application of Jantzen* exception provides a means to substantively review an agency decision when, although procedure was not followed, no harm was done to the claimant. However, the regulations DSS failed to follow in the instant case conferred procedural benefits upon the appellant. Instead of rejecting the appellant's request for a fair hearing for want of an action to review, DSS responded to the request by docketing a hearing for a denial that never took place. A hearing was held, but the director clearly did not consider the hearing as an appeal of a denial—a "fair hearing." The director rejected at least two of the appellant's legal arguments on grounds that the factual basis for the arguments regarded *reconsiderations* of eligibility and that the appellant's claim for eligibility was not a reconsideration. The director then purported to deny the appellant a fair hearing. Had DSS followed its own regulatory scheme, the appellant could have had the child's eligibility determined administratively and if the decision were unfavorable, could have had that decision reviewed by the director in a "fair hearing," where all extenuating circumstances could have been considered. Instead, the appellant got only one bite of the apple at the administrative level, and even that one bite was tainted by the director's misunderstanding as to what authority he had and where the appellant's claim was procedurally. The appellant was effectively denied the administrative appeal provided by 465 Neb. Admin. Code, ch. 2, § 001.02.

Because DSS did not follow its own regulatory scheme for determining eligibility for adoption assistance and the appellant was denied a proper determination and review of her claim, we conclude that the director's order denying eligibility for the child is invalid and was not reviewable by the district court. When a lower court does not gain jurisdiction over the case before it, an appellate court also lacks the jurisdiction to review the merits of the claim. *Richdale Dev. Co. v. McNeil Co.*, 244 Neb. 694, 508 N.W.2d 853 (1993), *modified* 244 Neb. 936, 510 N.W.2d 312 (1994).

## CONCLUSION

The director's finding and order underlying this appeal is invalid. Because the order is invalid, the district court lacked

jurisdiction to review the merits of the appellant's claims, and thus this court lacks jurisdiction to review the merits. We vacate the district court's decision in this matter and remand the cause to the district court with directions to dismiss DSS' August 14, 1995, order without prejudice to any future applications for assistance.

JUDGMENT VACATED, AND CAUSE REMANDED
WITH DIRECTIONS TO DISMISS.

WHITE, C.J., not participating.