A & D TECHNICAL SUPPLY CO., INC., SURVIVING CORPORATION OF A STATUTORY MERGER OF A & D TECHNICAL SUPPLY CO., INC., AND A & D DUPLICATING SERVICES CO., APPELLANT AND CROSS-APPELLEE, v. NEBRASKA DEPARTMENT OF REVENUE AND M. BERRI BALKA, STATE TAX COMMISSIONER, APPELLEES AND CROSS-APPELLANTS.

607 N.W.2d 857

Filed March 24, 2000.   No. S-98-728.

Alan J. Mackiewicz for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
### I. FACTUAL AND PROCEDURAL BACKGROUND

A & D Technical Supply Co., Inc. (A & D), is the surviving corporation of a merger of A & D Technical Supply Co., Inc., and A & D Duplicating Services Co. After audits of A & D's books and records for the periods from September 1, 1991, through July 31, 1994, for sales tax and from August 1, 1989, through July 31, 1994, for consumer's use tax, the Nebraska Department of Revenue issued deficiency assessments for both the sales and consumer's use taxes. A & D timely protested the deficiency assessments. The State Tax Commissioner sustained the assessments, and A & D appealed to the district court.

The issues on appeal, in the district court and in this court, can be grouped into two distinct areas: (1) collection of sales tax on purchases made by architectural firms working on behalf of tax-exempt organizations and (2) remission of use tax on payments made for computer software support and printing press maintenance.

### 1. SALES TAX

On May 3, 1993, A & D sold supplies to Zenon, Beringer, Mabrey (Zenon), an Omaha architectural firm. These supplies consisted of blue lines, cover stock, photocopies, and screwposts. This sale was made to facilitate work performed by Zenon for Wayne State College, a tax-exempt organization. On June 17, A & D made a similar sale to Zenon for supplies used for Zenon's work for the Bellwood Public Schools, another tax-exempt organization.

For both of these sales, Zenon furnished an exempt sale certificate, listing the seller as A & D and the purchaser as Zenon, on behalf of the tax-exempt organization. Both certificates listed the basis for exemption as category 5, or "[p]urchase of materials to be incorporated into a construction project pursuant to an attached purchasing agent appointment." There was no purchasing agent appointment attached to either certificate.

In June 1993, A & D made several sales to RDG Schutte, Wilscam, Birge, Inc. (RDG), another Omaha architectural firm. These sales provided supplies for RDG's work for Christ Community Church (Church), another tax-exempt organization.

RDG provided exempt sales certificates for these purchases, listing a category 3 exemption, which is a "[p]urchase by an organization created exclusively for religious purposes . . . ." The first of these certificates listed RDG as the seller and the Church as the purchaser, but the second showed A & D as the seller and the Church as the purchaser.

A & D claimed that (1) it was not required to collect sales tax on these transactions because the purchasers were agents of tax-exempt organizations and (2) it accepted the exempt sale certificates in good faith and is thus relieved of liability for failure to collect the tax. The Tax Commissioner rejected these contentions, claiming that exempt organizations cannot transfer their tax-exempt status simply because of an agency relationship. The Tax Commissioner further noted that the exempt sale certificates were not properly completed and that A & D could not have accepted these defective certificates in good faith.

The district court determined that the sales to Zenon and RDG were not exempt because the materials sold were not to be annexed to the real property of the exempt organization. The district court determined that because the certificates issued by Zenon were not properly completed, A & D did not accept them in good faith. The deficiency assessment was affirmed as to the Zenon transactions.

The district court found that the first of the RDG certificates was improper and could not have been accepted in good faith, but that the second certificate was properly completed, and that the sales to the Church were thereby good faith sales and A & D was relieved of liability for the sales tax.

## 2. USE TAX

A & D made periodic payments to RIMM Computer Systems (RIMM) for software support, including a service for fixing problems if the computer system was not working properly. A & D also made monthly payments to Quality Graphics Repair (Quality) for the cleaning and alignment of A & D's printing presses. A & D maintained that these payments were for non-taxable repair labor, while the Tax Commissioner determined that the payments were made for maintenance agreements which were subject to the use tax. The district court determined that the

payments were made pursuant to maintenance agreements which were subject to the use tax. Consequently, the deficiency judgments as to the use tax were affirmed.

## II. ASSIGNMENTS OF ERROR

A & D assigns, consolidated and restated, that the district court erred in failing to find that (1) Zenon was the authorized agent of Wayne State College and Bellwood Public Schools and that purchases by such an agent are exempt from sales tax under Neb. Rev. Stat. § 77-2704.15 (Supp. 1999); (2) A & D held properly completed exempt sale certificates from Zenon which it received in good faith, relieving it of liability for tax, penalty, and interest; and (3) the payments made to RIMM and Quality were not made pursuant to maintenance agreements as defined by Neb. Rev. Stat. § 77-2702.25 (Reissue 1996).

The department and the Tax Commissioner, on cross-appeal, assign that the district court erred in finding that A & D sustained its burden of proving it relied in good faith on the exempt sale certificate from the Church for work done by RDG on behalf of the Church.

## III. STANDARD OF REVIEW

An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. *Kimball v. Nebraska Dept. of Motor Vehicles*, 255 Neb. 430, 586 N.W.2d 439 (1998); *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997).

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997); *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995). A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Father Flanagan's Boys' Home v. Agnew*, 256 Neb. 394, 590 N.W.2d 688 (1999).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the

record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Kimball v. Nebraska Dept. of Motor Vehicles, supra*; *Miller v. Horton*, 253 Neb. 1009, 574 N.W.2d 112 (1998). An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Father Flanagan's Boys' Home v. Agnew, supra.*

The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below, according deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998); *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997).

Tax exemption provisions are strictly construed, and their operation will not be extended by construction. *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997); *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995). One claiming an exemption from taxation of the claimant or the claimant's property must establish entitlement to the exemption, because a statute conferring an exemption from taxation is strictly construed. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue, supra*; *Nebraska State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 465 N.W.2d 111 (1991).

## IV. ANALYSIS

### 1. SALES TAX

It should initially be noted that the parties do not contest the applicability of sales taxes to the type of transactions at issue. In other words, A & D agrees that it would be responsible for collecting sales taxes on the transactions were it not for the involvement of tax-exempt organizations. The dispute in the instant case regards the effect of that involvement.

In addition, we are aware that some of the statutes and regulations relevant to this appeal have been amended over the

course of the audit period. The parties have not presented any argument regarding these amendments, and we have determined that these changes do not affect our analysis of the instant appeal. Therefore, we will cite to the current statutory language for the sake of simplicity and convenience. See *In re Interest of Jeremy T.*, 257 Neb. 736, 600 N.W.2d 747 (1999).

(a) Exemption of Agent

The district court relied upon Neb. Rev. Stat. § 77-2704.12(3) (Reissue 1996), which provides:

> The appointment of purchasing agents shall be recognized for the purpose of altering the status of the construction contractor as the ultimate consumer of property which is physically annexed to the structure and which subsequently belongs to the owner of the organization or institution. The appointment of purchasing agents shall be in writing and occur prior to having any property annexed to real estate in the construction, improvement, or repair. The contractor who has been appointed as a purchasing agent may apply for a refund of or use as a credit against a future use tax liability the tax paid on inventory items annexed to real estate in the construction, improvement, or repair of a project for a licensed not-for-profit institution.

The district court also relied upon § 77-2704.15(2), which is substantially identical to the section quoted above. The only distinction between the two sections is that § 77-2704.12 applies to religious, nonprofit, educational, or medical organizations, such as Wayne State College and the Church, while § 77-2704.15 applies to the state, schools, or governmental units, such as the Bellwood Public Schools.

The Tax Commissioner and the district court both determined as a matter of fact that there was no credible evidence to support the conclusion that the materials purchased in the transactions at issue were, were intended to be, or even could be annexed to the real estate of the tax-exempt entities. The district court determined that the statutes, by setting forth specific circumstances and requirements for the transfer of tax-exempt status to agents, had foreclosed the transfer of that status under circumstances

that did not meet the statutory requirements. The district court stated that

> the existence of such provisions indicates that tax exempt organizations cannot transfer their tax exempt status to an agent in every situation. The fact that there is a specific provision that allows transfer of tax exempt status indicates that this transfer can occur only in the situations provided for in the statute.

██ The district court's interpretation is based upon the legal principle of expressio unius est exclusio alterius (the expression of one thing is the exclusion of the others), recognizing the general principle of statutory construction that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute. See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999). Since the Legislature saw fit to define the circumstances under which an agent of a tax-exempt organization can assume the benefit of tax-exempt status, it stands to reason that the Legislature intended such a specification to foreclose the possibility that an agent of a tax-exempt organization could assume the benefit of that status under other circumstances.

██ In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *In re Interest of Joshua M. et al., supra*; *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998). Were we to conclude that the existence of an agency relationship generally allows the agent to assume the tax-exempt status of the principal, then the statutes providing for such an assumption of status would be an unnecessary redundancy. Instead, basic principles of statutory interpretation require us to interpret §§ 77-2704.12(3) and 77-2704.15(2) as delimiting the circumstances under which the agent of a tax-exempt organization may assume the tax-exempt status of the principal.

The district court correctly determined that the sales from A & D to Zenon did not comply with the terms of §§ 77-2704.12(3) and 77-2704.15(2). Consequently, those pur-

chases were not exempt from taxation. A & D's assignment of error is without merit.

### (b) Good Faith

Neb. Rev. Stat. § 77-2703(1)(f) (Cum. Supp. 1998) provides, in relevant part:

> For the purpose of the proper administration of the provisions of the Nebraska Revenue Act of 1967 and to prevent evasion of the retail sales tax, it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of property is not a sale at retail is upon the person who makes the sale unless he or she takes, in good faith, . . . an exemption certificate pursuant to subsection (7) of section 77-2705 . . . . Receipt of a[n] exemption certificate, . . . taken in good faith, shall be conclusive proof for the seller that the sale was . . . exempt . . . .

The Nebraska Sales and Use Tax Regulations, 316 Neb. Admin. Code, ch. 1, § 014.05 (1994), state:

> To be taken in good faith, the certificate must be properly completed and the retailer (seller) should know, or have reason to believe, that the purchaser is exempt from tax for the sales made to the exempt organization under this exempt sale certificate. An incomplete or improperly completed certificate shall constitute evidence of a lack of good faith. To be properly completed, the certificate must include all of the following:
>
> 014.05A Identification of both purchaser and seller;
>
> 014.05B Statement of basis for exemption as described on the Nebraska Resale or Exempt Sale Certificate, Form 13, including completion of all information for the basis chosen;
>
> 014.05C A statement as to whether the certificate is for a single purchase or is a blanket certificate for future sales;
>
> 014.05D Authorized signature; and
>
> 014.05E Date of issuance.

 Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998); *Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997).

The district court determined that the certificates issued by Zenon in this case were not properly completed, and so did not comply with 316 Neb. Admin. Code, ch. 1, § 014.05. The Zenon certificates are marked as category 5 exemptions, which category requires that a purchasing agent appointment be attached to the form. No purchasing agent appointment is attached to these forms. Additionally, category 5 relates to materials to be annexed to real property, as set forth in § 77-2704.12(3), and the district court found that A & D knew or should have known that the materials purchased were not to be annexed to real property.

A & D argues that the indication of category 5 on these forms, as opposed to category 3 (sale to an exempt organization), is the result of a clerical error and should be overlooked. The district court rejected this argument, noting that even if this was the case, the certificates and invoices showed that the buyer of the materials was not the exempt organization, but Zenon.

The district court's determination is well supported by the record. The district court correctly noted that the certificates and invoices showed the purchaser of the materials to be Zenon, which A & D knew was not an exempt organization. Moreover, the certificates were not properly completed, as required by 316 Neb. Admin. Code, ch. 1, § 014.05.

Under those circumstances, A & D has clearly not met its burden of showing that the certificates were accepted in good faith. See § 77-2703(1)(f) (placing burden of proof upon taxpayer). A & D's assignment of error is without merit.

The district court determined that good faith was present in the acceptance of the last certificate from RDG. This determination is challenged by the department and the Tax Commissioner on cross-appeal. They primarily argue that the certificate could not have been accepted in good faith, as it was not accepted until well after the completion of the sale.

The district court nonetheless found that the certificate was properly completed pursuant to category 3 and that good faith was present under the regulations. An examination of the certificates issued by RDG shows that the final certificate contains all the necessary information for a category 3 exemption and that it properly shows the Church as the purchaser of the supplies.

As with the Zenon purchases, however, the invoices in this instance show that RDG, and not the Church, was the purchaser of the materials. Moreover, as A & D was no doubt aware, the supplies purchased were architectural supplies, useful to RDG but of little utility to the Church.

Most significantly, the invoices show that the sales at issue occurred on three separate dates in June 1993. The first exempt sale certificate in the record shows that it was completed in July 1993 and that it was completed incorrectly. The second, correctly completed certificate upon which the district court relied was completed on April 5, 1994—nearly 10 months after the sales at issue.

Given the record presented, we cannot agree that A & D met its burden of showing that it accepted the exempt sale certificates from RDG in good faith. The record shows that the only correctly completed certificate was accepted nearly 10 months after the sales and that even at the time of the sales, the invoices show the purchaser as RDG, and not as the Church. The department and the Tax Commissioner's assignment of error on cross-appeal has merit, and the judgment of the district court is reversed to that extent.

## 2. Use Tax

A & D also appeals from deficiency assessments imposed due to A & D's failure to collect use tax on certain transactions that A & D claims involved nontaxable repair labor.

Section 77-2703 provides, in relevant part:

(1) There is hereby imposed a tax at the rate provided in section 77-2701.02 upon the gross receipts from all sales of tangible personal property sold at retail in this state, the gross receipts of every person engaged . . . as a retailer of intellectual or entertainment properties referred to in subsection (3) of section 77-2702.07 . . . and the gross receipts from the sale of warranties, guarantees, service agreements, or maintenance agreements when the items covered are subject to tax under this section. . . .

(2) A use tax is hereby imposed on the storage, use, or other consumption in this state of property purchased, leased, or rented from any retailer and on any transaction

the gross receipts of which are subject to tax under subsection (1) of this section . . . .

A "maintenance agreement" is defined in § 77-2702.25(1) as follows:

> Maintenance agreement shall mean any contract or agreement to provide or pay for the maintenance, repair, or refurbishing of an item, the sale of which is subject to tax under section 77-2703, for a stated period of time or interval of use. Maintenance agreement shall include any such agreement whether or not the agreement requires additional payments for some or all of the parts or services provided under the agreement. Maintenance agreement shall include contracts or agreements designated as warranties, extended warranties, guarantees, service agreements, maintenance agreements, or any similar term.

We are aware that § 77-2702.25 was enacted by the Legislature in 1993 and became operative on October 1, 1993. See 1993 Neb. Laws, L.B. 345, 93d Leg., 1st Sess. 1533-34 (June 10, 1993). Consequently, although "maintenance agreements" were taxable pursuant to § 77-2703 at the time of the transactions at issue, the definition of "maintenance agreement" contained in § 77-2702.25(1), upon which A & D relies, was not yet in effect. We determine, however, that even if this definition is applied to the transactions in question, A & D's argument is without merit.

A & D argues that the transactions at issue involved repair labor and thus are nontaxable. This argument is based on 316 Neb. Admin. Code, ch. 1, § 082 (1994), which provides in relevant part:

> 082.01A Labor charges, relating to tangible personal property, will generally fall into one of four categories: production, assembly, repair, and installation. Charges for production and assembly labor are taxable, while charges for repair and installation labor are exempt.
>
> . . . .
>
> 082.03A REPAIR LABOR. Repair labor is defined as the labor involved in restoring a used, worn, or damaged item of tangible personal property to essentially its origi-

nal form and condition. Repair labor does not include making repair parts for another person who is making the repair. Separate charges for repair labor are not taxable, while the repair parts are taxable.

### (a) Computer Software

The parties agree that the sale of computer software is taxable. See, Neb. Rev. Stat. § 77-2702.07(3)(a) (Supp. 1999); 316 Neb. Admin. Code, ch. 1, § 088 (1994). See, also, *May Broadcasting Co. v. Boehm*, 241 Neb. 660, 490 N.W.2d 203 (1992) (holding that syndicated television programming purchased by broadcasters is tangible personal property taxable under § 77-2703). The question at issue is whether the software support agreement between A & D and RIMM constituted a taxable maintenance agreement or nontaxable repair labor.

The only competent evidence in the record regarding the terms of the agreement between A & D and RIMM comes from the testimony of Delbert Dale, president of A & D. Dale testified that RIMM was founded by an employee of the company that had sold the blueprint software on which A & D relied. RIMM contracted with A & D to provide support for A & D's use of the software.

The record is far from clear regarding the exact terms of the agreement. Dale testified that there was no written agreement between A & D and RIMM. RIMM offered a pricing schedule that permitted payment on a monthly, quarterly, or semiannual basis. The record shows that A & D usually paid RIMM a flat monthly fee for software support, but, on at least one occasion, it paid RIMM a semiannual fee.

Dale testified that when A & D's system "crashes . . . if it locks up, whatever, we call [Rimm] and he will get whatever's on our screen on his screen via phone modem and try to fix it." Dale testified that the software support agreement at issue did not involve any new programming of the system, or any alterations to the software, but simply required RIMM's expertise to "unstick" the system when it "crashed." Essentially, Dale's testimony established that RIMM was paid a periodic fee to be available to remotely operate the software whenever a mistake by A & D rendered the system inoperable.

The Supreme Court of Louisiana confronted a similar situation in *South Cent. Bell Telephone v. Barthelemy*, 643 So. 2d 1240 (La. 1994). Under Louisiana law, maintenance services are not generally taxable, while repair labor is. *Id.* The Supreme Court of Louisiana was thus required to determine whether software support services were maintenance or repair services. *Id.* The court stated:

> The maintenance services acquired by Bell do not constitute "repairs" and thus are not taxable. The term "repairs" must be given its generally prevailing meaning and be construed according to its common usage. . . . Webster's New Collegiate Dictionary defines "repair" as, "to restore by replacing a part or putting together what is torn or broken." The jurisprudence has similarly defined it as, to fix anything that is broken. *Intracoastal Pipe Serv. Co.* [*v. Assumption Parish*], 558 So.2d [1296,] 1300 [(La. App. 1990)] (cleaning of tubing (pipe used in oil and gas industry) did not constitute "repair services" since "the cleaning services do not 'fix' anything that is broken.") "Repair services" has also been defined as a process or service which restores a thing to the condition in which it originally existed. *McNamara v. Stauffer Chemical Co.*, 506 So.2d 1252 (La.App. 1st Cir.1987) (restoration of spent sulfuric acid to its original condition such that it was again usable was held to constitute "repair services.") Under any of these definitions, the services acquired by Bell do not fall under the rubric of "repair services." The services provided were not to "fix" broken software but were to enhance already operable software and make it perform as efficiently as possible, and to advise Bell with respect to certain usages of the software. Therefore, we hold that the maintenance services provided to Bell are not taxable.

(Citation omitted.) *South Cent. Bell Telephone v. Barthelemy*, 643 So. 2d at 1250-51.

The reasoning of *South Cent. Bell Telephone v. Barthelemy, supra*, is persuasive in the instant case, although it compels a contrary result. Nebraska law states that to "repair" means to restore to a sound or good state after decay, injury,

dilapidation, or partial destruction. See, *Zuroski v. Estate of Strickland*, 176 Neb. 633, 126 N.W.2d 888 (1964); *Shields v. County of Buffalo*, 161 Neb. 34, 71 N.W.2d 701 (1955); *Quist v. Duda*, 159 Neb. 393, 67 N.W.2d 481 (1954); *Olson v. County of Wayne*, 157 Neb. 213, 59 N.W.2d 400 (1953).

Under this definition, A & D did not meet its burden of proving that the services provided by RIMM qualified for exemption as repair labor. Dale's testimony was that RIMM did not program the A & D computer system or modify the software in any way, other than to operate it proficiently and to "unstick" it whenever an operator error "crashed" the system. As RIMM did not change the content of the software that was the subject of the agreement, RIMM could not have restored it after decay, injury, dilapidation, or partial destruction. See *id.*

A & D had the burden at trial of proving entitlement to the tax exemption for repair labor. See, *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *Nebraska State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 465 N.W.2d 111 (1991). A & D did not present evidence demonstrating its entitlement to that exemption because the evidence it presented did not show that RIMM's services constituted "repair" as that term is defined by Nebraska law.

A & D also contends that the agreement with RIMM is tax exempt under 316 Neb. Admin. Code, ch. 1, § 088.03, which provides that "[c]harges for consultants who only provide generalized advice and who do not provide any software or modifications to software are exempt." A & D correctly observes that RIMM did not provide any software or modifications to software. This does not mean, however, that RIMM's services automatically fall into the category of "generalized advice." The evidence in the record indicates that RIMM did not advise A & D pursuant to the support agreement, but, instead, provided services to A & D by providing necessary operation of A & D's computer system. Consequently, A & D did not prove that the software support agreement between A & D and RIMM concerned "generalized advice," and A & D did not prove the transaction was tax exempt under § 088.03.

A & D further argues that the agreement is not a maintenance agreement as defined by § 77-2702.25 because it is not "for a

stated period of time or interval of use." A & D argues that since either A & D or RIMM could terminate the agreement at any time, the agreement was not for a stated period of time or interval of use. The district court found this argument to be without merit, as the agreement provides for payment on a periodic basis, depending upon the payment plan selected. The record reflects that A & D paid RIMM on a monthly or semiannual basis at different times. While either party could decide, at the end of a given period, not to continue the agreement, that does not change the fact that a flat fee had been charged for all services rendered pursuant to the agreement during that period of time. Consequently, that period was a stated time or interval of use within the meaning of § 77-2702.25. A & D's claim is without merit.

A & D did not meet its burden of proving that the software support agreement with RIMM was exempt from taxation either as repair labor or as an agreement for generalized advice. The district court did not err in so concluding. A & D's assignment of error is without merit.

### (b) Printing Presses

A & D advances similar arguments regarding its agreement with Quality to clean and realign A & D's printing presses. The Tax Commissioner determined that A & D had a maintenance agreement with Quality subject to taxation under § 77-2703, and the district court affirmed this determination. A & D argues that this agreement was not a maintenance agreement as defined by § 77-2702.25 and that the agreement was for repair labor as exempted by 316 Neb. Admin. Code, ch. 1, § 082.03A.

The record reflects that A & D was in the business of publishing, which required the use of offset printing presses. Testimony at the hearing indicated that offset printing machines require regular cleaning and alignment and that Quality provided this service once a month for a monthly fee.

Again, no written agreement between A & D and Quality appears in the record. Dale's testimony established that for $250 per month, Quality would come to A & D's place of business and clean and align the printing presses. Dale stated that the $250 monthly fee included the labor for replacement of any nec-

essary parts, but that if repair was necessary, the parts were invoiced separately. The record contains copies of separate invoices and payments for the Quality "service contract" and for items labeled as "repair." Dale conceded on cross-examination that the $250 fee was a flat monthly fee, although either party could terminate the arrangement at any time.

A & D first argues that this agreement was not for a "stated period of time or interval of use" within the meaning of § 77-2702.25. While the record in this case is marginal at best concerning the terms of the agreements between A & D and its vendors, we conclude, based on the same reasoning relating to RIMM, that there is competent evidence in the record to support the district court's conclusion that this agreement was on a monthly basis and that it was for a stated period of time or interval of use within the meaning of § 77-2702.25.

A & D also argues that this agreement was for repair labor exempt under 316 Neb. Admin. Code, ch. 1, § 082.03A. Again, our review is limited by A & D's failure to present evidence clarifying the exact duties of Quality pursuant to the agreement. Given the sparse information contained in the record regarding exactly what Quality was paid to do, there is no error appearing on the record in the district court's determination that A & D had not proved it was entitled to an exemption for repair labor. A & D's assignment of error is without merit.

## V. CONCLUSION

A & D failed to present evidence to the district court sufficient to sustain its burden of proving its entitlement to the tax exemptions it claims. Specifically, we affirm the district court's determination that the sales from A & D to Zenon did not comply with the terms of §§ 77-2704.12(3) and 77-2704.15(2) and that A & D could not have relied in good faith on the exempt sale certificates presented by Zenon. We determine, however, that the district court erred in determining that A & D could have relied in good faith on the exempt sale certificates presented by RDG, and the district court's judgment is reversed to that extent. Based upon the evidence presented and the applicable standard of review, we find no error appearing on the record in the district court's determinations that the agreements between A & D and

RIMM and A & D and Quality were subject to taxation as maintenance agreements and that A & D did not meet its burden of proving exemption. In sum, the judgment of the district court is affirmed in part and in part reversed, and the cause is remanded to the district court with directions to affirm the order entered by the Tax Commissioner.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., not participating.