REQUESTED BY: John L. Craig, Director Nebraska Department of Roads
You have requested an Attorney General's Opinion which addresses two questions: (1) does the Nebraska Highway-Rail Grade Crossing Safety and Consolidations Act authorize the expenditure of funds from the State Grade Crossing Protection Fund for crossing safety improvement projects at private crossings; and (2) if public funds are used for safety improvements at private crossings, will there be a violation of the prohibition on using public funds for private purposes? We are of the opinion that the Nebraska Highway-Rail Grade Crossing Safety and Consolidations Act does not authorize the expenditure of funds from the State Grade Crossing Protection Fund for safety improvement projects at private crossings. We do not believe it is necessary to answer your second question because we believe our conclusion to your first question renders your second question moot at this time.
 Background
In 1979, the Nebraska Legislature authorized the Nebraska Department of Roads to develop a process for improving the safety of railroad crossings in Nebraska (hereafter referred to as the "Railroad Safety" provisions). Neb. Rev. Stat. § 74-1310 et seq. (1996 Reissue.) To enable this process, the Legislature created the Grade Crossing Protection Fund (hereafter referred to as the "Fund") and authorized the Department of Roads to utilize federal funds, local matching funds and the Fund to finance safety improvement projects at railroad crossings. Neb. Rev. Stat. § 74-1315, 1317, 1318.
Historically, the Department of Roads has administered the Fund to provide financing solely for safety improvement projects at the intersection of all classes of public highways and railroad lines ("public crossings"). The Department of Roads has never utilized the Fund for safety improvements at the intersection of private roads or drives and railroad lines ("private crossings").
In 1997, the Legislature passed the Nebraska Highway-Rail Grade Crossing Safety and Consolidations Act (hereafter referred to as "Crossing Act"). As part of the Crossing Act, the Legislature transferred certain regulatory authority of the Nebraska Public Service Commission regarding "public and private" crossings to the Nebraska Department of Roads. Neb. Rev. Stat. §§ 74-1331 through 1340. In addition, the Crossing Act also authorized the Department of Roads to promulgate rules and regulations establishing a comprehensive public safety program to deal with problems associated with public and private highway-rail grade crossings. Neb. Rev. Stat. §§ 74-1341 through 1343. We understand that it is these two references to "private" crossings in the Crossing Act that prompted your request for our opinion.
 Discussion
Does the Nebraska Highway-Rail Grade Crossing Safety and Consolidations Act authorize the expenditure of funds from the State Grade Crossing Protection Fund for railroad crossing safety improvement projects at private crossings? The statute that created the Fund was not amended by the Crossing Act. The Fund was created in Neb. Rev. Stat. § 74-1317 and the Department's power to administer the Fund is set out in § 74-1318. Neb. Rev. Stat. § 74-1317 provides:
 In order to promote public safety at the intersection of railroad lines and all classes of highways there is created a special fund known as the Grade Crossing Protection Fund which shall be established in the state treasury to be used in furnishing financial assistance in the improvement of the safety of railroad grade crossings in this State. . . .
(Emphasis supplied).
This raises the question of whether a private road is included in the phrase "all classes of highways." When construing a statute, one must give effect to the purpose and intent of the Legislature as ascertained from the language of the statute considered in its plain, ordinary, and popular sense. State ex rel. Stenberg v. Moore, 258 Neb. 199, 208,602 N.W.2d 465, 472 (1999). The application of § 74-1317 is limited to "the intersection of railroad lines and all classes of highways." "Highway" is defined in both Neb. Rev. Stat. § 39-101 (3) (1998 Reissue) and in 60-624 (1998 Reissue) as follows: "[h]ighway shall mean . . . any street, road, avenue, boulevard, or way which is publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Black's Law Dictionary and Webster's Dictionary also define a Highway to be a "public" road. The private road or driveway at a private crossing is therefore not a Highway. The Fund can therefore not be used to fund improvements at private crossings, according to the plain language of § 74-1317.
The language of Neb. Rev. Stat. § 74-1318 also supports the conclusion that the proceeds of the Fund can not be used for improvements at private crossings. Neb. Rev. Stat. § 74-1318, which controls the administration of the Fund, contains detailed guidance on the use of funds from the Fund, but contains no references to expenditures from the Fund for projects at private crossings.
This interpretation is also consistent with the maxim of expressio unius est exclusio alterius which provides that a statute which enumerates the things on which it is to operate excludes all those not expressly mentioned. A D Tech. Supply Co. v Nebraska Dept. of Revenue,259 Neb. 24, 31, 607 N.W.2d 857, 863 (2000). Since the statutes governing the Fund expressly enumerate that it concerns the "intersection of railroad lines and all classes of highways" the above maxim would exclude the use of money from the Fund at private crossings. In light of the above, we are of the opinion that the Fund is intended to be used exclusively for safety improvement projects at public crossings in Nebraska.
As mentioned in your request, the Crossing Act appears to grant certain regulatory authority to the Nebraska Department of Roads over private crossings in the State of Nebraska. At least two provisions of the Crossing Act refer to private crossings. However, we believe that this new regulatory authority does not conflict with and supersede the limitations on the use of the Fund discussed above. As will be discussed below, the regulatory authority does not conflict with the statutes governing the use of the Fund and does not provide authorization for use of the Fund for improvement projects at private crossings. A review of the specific provisions of the Crossing Act and the previously enacted Railroad Safety provisions reveals that these statutes can be harmonized in a manner that gives effect to each and every provision contained therein. Neb. Rev. Stat. § 74-1332 of the Crossing Act provides:
 The Department of roads shall have jurisdiction over all crossings outside of incorporated villages, towns, and cities, both public and private, across, over, or under all railroads in the State, except as provided in Sections 74-1338
to74-1340, and shall adopt and promulgate such rules and regulations for the construction, repair and maintenance of the crossings as the Department deems adequate and sufficient for the protection and necessity of the public.
(Emphasis supplied.)
Neb. Rev. Stat. § 74-1342(1) of the Crossing Act provides:
 The Department of Roads shall adopt and promulgate rules and regulations establishing a comprehensive public safety program to deal with problems associated with public and private highway-rail grade crossings. In designing such a program, the department shall establish a process for assessing the risk to the public from particular grade crossings and for reducing or eliminating such risk in a cost-effective and timely manner. The department shall actively solicit input from the public and from representatives of county and municipal governments, the Federal Highway Administration, the Federal Railroad Administration, and any other individuals or entities with an interest in grade crossing safety.
(Emphasis supplied.)
The Railroad Safety provisions discussed earlier and the Crossing Act provisions cited above cover the same basic subject matter. "Statutes pertaining to the same subject matter should be construed together. Such statutes, being in pari materia, must be construed as if they were one law and effect given to every provision." Bass v. County of Saline,171 Neb. 538, 540, 106 N.W.2d 860 (1960). To construe statutes in pari materia we must, as far as practicable, give effect to the language of the statute and to reconcile the different provisions of it so that they are consistent, harmonious, and sensible. Hoiengs v. County of Adams,254 Neb. 64, 71, 574 N.W.2d 498, 503 (1998). Where it is possible to harmonize apparently conflicting statutes, such is to be done. Hoiengs,254 Neb. at 71, 574 N.W.2d at 503. Further, in enacting a statute the Legislature must be presumed to have knowledge of all previous legislation upon the subject. Wahlers v. Frye, 205 Neb. 399, 401,288 N.W.2d 29, 30 (1980). "The intent of the Legislature is expressed by omission as well as by inclusion." Bass 171 Neb. at 541,106 N.W.2d at 863.
We believe that the provisions of the Crossing Act, the Railroad Safety provisions, and the Fund provisions can be harmonized and are consistent. The Department has been empowered to regulate certain aspects of private railroad crossings. There is no specific statutory language in any of the provisions, however, that authorizes the Department of Roads to use monies from the Fund to complete safety improvement projects at private crossings. We therefore believe that the limitations on the use of the Fund for projects at private crossings has not been affected by the provisions of the Crossing Act. For all of the foregoing reasons we are of the opinion that the language of §§ 74-1317, 1318, 1332 and 1342 does not authorize the expenditure of funds from the State Grade Crossing Protection Fund for safety improvements projects at private crossings. As stated at the beginning of this opinion, it is not necessary to answer your second question because we believe our conclusion to your first question renders your second question moot at this time.
 Sincerely, DON STENBERG
 Attorney General Matthew F. Gaffey Assistant Attorney General