In the Matter of the Claims of NORMA B. WALKER et al., Respondents. READER'S DIGEST, Respondent. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

Third Department, November 22, 1967.

*Louis J. Lefkowitz, Attorney-General* (*Samuel A. Hirshowitz, Samuel Stern* and *Irving Jorrisch* of counsel), for appellant.

*William Barnabas McHenry* for Reader's Digest, respondent.

GIBSON, P. J. The Industrial Commissioner appeals from a decision of the Unemployment Insurance Appeal Board which, in reversing a Referee's affirmance of the Commissioner's initial determination, held claimants ineligible for unemployment insurance benefits on the ground that during the periods in question they were receiving vacation pay, rather than severance pay or dismissal payments as found by the Referee. (Unemployment Insurance Law [Labor Law, art. 18], § 591, subd. 3; § 517, subd. 2, par. [i].) That claimants were ineligible for benefits during the intervals recognized by all parties as constituting regular or normal vacation periods is, of course, conceded. The case turns on the employer's announced extensions of these normal vacation periods, in the cases of dismissed employees only. During these additional periods claimants were paid for " extended vacations " on the basis of a schedule of " additional vacation credits " adopted by the employer in 1964 (to take effect on the dismissal of any employee) in substitution for an identical schedule of " severance pay " benefits theretofore in effect.

Section 591 (subd. 3, par. [a]) provides that no benefits shall be payable " for any day during a paid vacation period "; and section 517 (subd. 2, par. [i]) provides that " remuneration " (on the basis of which benefits are calculated and paid) " does not include * * * (i) Dismissal payments." The issue, then, is whether payments made by the employer to dismissed employees pursuant to a rate schedule in effect several years, entitled and fixing " Severance Pay ", but by the employer's unilateral action redesignated " Additional Vacation Credits " prior to the dismissals here involved, constituted payments for a " paid vacation period " under paragraph (a), above quoted, or " dismissal payments " under paragraph (i), above referred to. We remark at the outset — unnecessarily perhaps — that the courts have no legitimate concern with either the firmly established legislative policy, or the reasons underlying it, requiring that dismissed employees, while unemployed and engaged in good faith in a search for re-employment, and although at the same time receiving severance or dismissal payments, shall be eligible for unemployment insurance benefits.

There are in evidence two manuals published by the employer; the first, bearing a 1961 copyright, deals in one subdivision with " Earned Vacation " and in another with " Severance

Pay "; the second, copyright 1964, provides, instead, for " Normal Vacation Credits " and " Additional Vacation Credits ". The later manual forms the basis of the board decision appealed from. The pertinent provisions of the two publications may profitably be compared, in the light of the fact that the amendatory legislation upon which the employer relies became effective intermediate the 1961 and 1964 copyright dates.

The introductory paragraphs of the 1961 edition, headed " your annual vacation ", reflect the common understanding of the nature and purpose of a vacation, noting, first, that the employer's " desire　*　*　* to do everything to make this a pleasant place to work is well illustrated, we believe, in our vacation policy " and, then, that " vacations have been designed to be taken in full, in units of a week or more, to provide the greatest amount of benefit to the employee." The 1964 manual also contains the " your annual vacation " caption and opens, and continues word for word, with the above-quoted introductory paragraphs. There follows, in each manual, a schedule showing the number of days vacation to which employees of varying periods of service will become entitled. The vacation period for an employee hired during January or February of any year, for example, is of one week in that calendar year (after six months of continuous service), of three weeks the second calendar year and of four weeks thereafter. The schedule in the 1964 manual is identical.

Following this schedule, the 1961 manual states that vacation time " is dependent upon the work requirements of various divisions and departments; but the vacation period normally extends from March 15 to September 15 "; that the choice of " vacation dates within each department will be arranged with the department head to comply with individual preferences as far as possible, according to work requirements　*　*　* but every effort will be made to give you the vacation time you want." In view of the admitted function of the 1964 manual it is with considerable surprise that we find these provisions repeated therein, without qualification.

This schedule is followed, in each manual, by another schedule showing the vacation credits to which employees will be entitled on termination of employment, the provisions in the two manuals being identical, going from " Half of vacation " in the case of a January termination date progressively to " Half of vacation plus four fifths of the balance " in the case of a May termination date, with " Full vacation " upon a termination after June 1. As hereinbefore noted, the first difference in treatment occurs with this schedule in the 1964 manual which captions

the schedule " Normal Vacation Credits " rather than " Earned Vacation " as in the 1961 edition.

The 1961 manual in its " Severance Pay " subdivision provided severance pay of two weeks for one to two years' service, progressing to six weeks for four to five years' service and adding for each additional year of service, two additional weeks of severance pay, up to a maximum of 16 weeks. The 1964 manual, after deleting the heading " Severance Pay " and substituting " Additional Vacation Credits ", carries over these specific provisions unchanged, with the important and significant exception that the allowance of any " additional vacation credits " is made discretionary with the employer.

The 1964 provisions concluded with this statement: " Prior to your termination you will have an opportunity to discuss your leave-taking with a member of the Personnel Department."[*]

Of critical importance to this litigation is this key provision in the 1964 manual: " If you should leave the Digest employment for any reason, or you are released by the company, the vacation period agreed upon will follow the last day of employment irrespective of any prior election by you or designation by the company." This provision, and those which precede and follow it in the manual, were intended, obviously enough, to exclude liability for unemployment insurance benefits during the period an employee might be receiving severance pay, by the simple expedients of first applying to his actual severance pay the arbitrary label of " vacation " pay and then transposing to the manual the operative language of the statute which denies benefits during vacation periods duly " designated " as such. The statute, section 591 of the Labor Law, in pertinent part provides: " 3. Vacation period or holiday. (a) No benefits shall be payable to a claimant for any day during a paid vacation period * * * nor shall any such day be considered a day of total unemployment * * * (b) The term ' vacation period ' * * * means the time designated for vacation purposes in accordance with the collective bargaining agreement or the employment contract or by the employer and the claimant, his union, or his representative. If either the collective bargaining agreement or the employment contract is silent as to such time, or if there be no collective bargaining agreement or employment contract, then the time so designated in writing

---

[*] Such an "opportunity" was indeed afforded these claimants, each at a so-called "exit interview" whereat, upon leave taking, each was prevailed upon to sign a form whereby he purportedly agreed to the extended "vacation" period. Respondent employer's brief does not refer to these papers.

and announced to the employees in advance by the employer is to be considered such vacation period.''

That the payments to claimants for periods beyond their regular vacation periods constituted dismissal payments under section 517 seems to us too clear to require extended discussion. In the construction of beneficial and remedial statutes such as the Unemployment Insurance Law, and papers and procedures evolving under it, the courts are, under long and well-established principles, bound to look to the substance rather than to the form. In no sensible view of the actualities, could these payments be found other than dismissal and severance payments, the right to which was, in each case, earned during prior service. These sums became due and payable *only* by reason of claimants' severance. No other employee, whatever the length and value of his service, could become entitled to such ''additional vacation credits''. The payments bear no relation whatsoever to normal vacations and vacation payments, which accrue on an annual basis. Neither do they bear any relation to the near-universal concept of a vacation as a respite from work, purposed for rest, relaxation and personal pursuits, with the almost invariable corollary of a return to work at the end of the period.

We do not, by any means, treat the comparable provisions of the 1961 and the 1964 manuals as conclusive against the employer. They do, however, reflect the original intent and effect of the arrangement and, in our view, the continued intent and effect of the differently entitled plan as well. Merely to relabel severance pay as additional vacation credits with no substantive change of any moment, seems to us as ineffectual to alter the *fact* as would be an attempt to relabel the discharge or dismissal itself as a vacation or respite for rest and relaxation. The right of a discharged employee to unemployment insurance benefits is to be adjudicated by the administrative authority and by the courts on the basis of the *fact* and is not to be determined by the employer on the basis of whatever label or designation he may from time to time apply.

The record before us does not indicate whether or not the employer was under any contractual or other obligation to continue, with respect to employees already in service, the rights to severance payments conferred by its 1961 publication. It may have had the right to discontinue those rights completely; but that it did not do, and if, for some advantage to itself or for some contractual or other reason, it chose to continue some form of dismissal payments, it was not entitled,

as an incident thereto, to resort to subterfuge intended to deprive its employees of the rights conferred upon them by statute.

The respondent misreads the provision respecting " the time *designated* [by the employer] for vacation purposes ". (Labor Law, § 591, subd. 3, par. [b]; emphasis supplied.) Clearly, it seems to us, the provision requires or permits that the " *time* " of the " ' vacation period ' " be " *designated* "; not that the employer, under guise of designating time, unilaterally impose its *definition* of what a vacation is or shall be. It is unnecessary to recount the long and tortuous judicial history of vacation issues under the Unemployment Insurance Law as amply confirming that the *time* factor has been the core question of the litigation. The language of paragraph (b) speaks for itself.

The contention that all the benefits of the employment relationship continued during the so-called vacation period overlooks one important and unusual concomitant — the reasonably to be anticipated right to return to the job after the respite from work.

Respondent seems to attach some significance to the 1963 amendment to subdivision 3 (L. 1963, ch. 794) but we find nothing therein and nothing in the fact of, or the legislative history concerning, the amendment that is either supportive of respondent's argument or in contravention of the conclusion at which we have arrived. Indeed, the language of the provision of paragraph (b) of subdivision 3 as to " the time designated for vacation purposes ", upon which respondent's case largely depends, was transposed verbatim from former paragraph (f) of subdivision 3, which had been enacted by chapter 387 of the Laws of 1958. So far as can be discerned from the rather vague language of its brief, respondent seems for some reason to find also significant the supposition that the 1963 amendments to subdivision 3 were impelled or influenced by our decision in *Matter of Miranda* (*Catherwood*) (13 A D 2d 571); and respondent thereupon, and on no discernible basis at all, suggests as the issue, or one of them, that we are now called upon to determine " whether the Legislature correctly expressed its desire to revise the ' injustices ' of *Matter of Miranda*." The " injustices " referred to in *Miranda* (p. 573), however, were those that followed a construction of the statute that permitted " an employee who is enjoying a true rest from work and being paid directly by the employer to receive a windfall in unemployment benefits." Here, there is no employee " enjoying a true rest from work " and, hence, no " windfall " and no " injustices "; it being conceded by every one con-

cerned that no benefits are claimed and none are payable for the normal vacation periods which preceded the misnamed " extended vacations ".

The decision should be reversed, with costs to appellant, and the claims remitted for further proceedings not inconsistent with this opinion.

HERLIHY, J. (concurring). I concur in the result; however, upon remittal and with additional proof, it may be possible for the board to make the finding of vacation pay.

AULISI, STALEY, JR., and GABRIELLI, JJ., concur with GIBSON, P. J.; HERLIHY, J., concurs in the result, in a memorandum.

Decision reversed, with costs to appellant, and claims remitted for further proceedings not inconsistent with the opinion herein.