LANCASTER COUNTY SCHOOL DISTRICT NO. 0001, ALSO KNOWN AS LINCOLN PUBLIC SCHOOLS, APPELLEE, V. STATE OF NEBRASKA DEPARTMENT OF LABOR AND FERNANDO LECUONA, COMMISSIONER OF LABOR, APPELLEES, AND KARL PALMQUIST, APPELLANT.

615 N.W.2d 441

Filed July 28, 2000. No. S-99-803.

Patrick T. Carraher, of Legal Services of Southeast Nebraska, for appellant.

Riko E. Bishop, of Perry, Guthery, Haase & Gessford, P.C., for appellee Lincoln Public Schools.

John F. Sheaff and John H. Albin for appellee Fernando Lecuona.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Karl Palmquist, a former employee of Lancaster County School District No. 0001, more commonly known as Lincoln Public Schools (LPS), appeals from an order of the district court for Lancaster County, Nebraska, which reversed the findings of the Nebraska Appeal Tribunal and determined that Palmquist was disqualified from receiving certain unemployment compensation benefits pursuant to Neb. Rev. Stat. § 48-628(1)(a) (Reissue 1998) because he left work voluntarily without good cause. We conclude that the district court did not err in applying the law to the uncontroverted facts in this case and therefore affirm its judgment.

## BACKGROUND

Palmquist began working for LPS as a paraeducator at Lincoln High School on January 13, 1997, earning $6.12 per hour. He remained in this position full time until the end of the 1996-97 school year. He did not work during the summer of 1997 but resumed his duties as a full-time paraeducator in September, under a 10-month contract. In February 1998, LPS honored Palmquist's request to work part time because of scheduling conflicts with his continuing education at the University of Nebraska-Lincoln.

In April 1998, Palmquist's supervisor held a meeting with the paraeducators employed by LPS, during which she informed them that positions would be available for all of them for the following school year. Although Palmquist testified that he did not attend this meeting, he also testified that he believed he would have been able to return to his paraeducator job for the 1998-99 school year had he desired to do so. Palmquist was approved by LPS to hold one of the open paraeducator positions for the 1998-99 school year. However, Palmquist informed LPS on May 22, 1998, that he was resigning at the end of the school year and would not be returning to work in the fall because his student teaching schedule conflicted with the hours available to paraeducators. Thus, Palmquist's employment with LPS concluded on June 4, the end of his contract term and his last actual day of work for LPS. In August, Palmquist received a letter from LPS informing him that it was still seeking paraeducators for the fall term and that he would qualify for a wage increase.

Beginning in January 1998, Palmquist was employed by Transfiguration Inc. as a paraeducator working part time in a home-based environment and earning $6.50 per hour. Palmquist held the part-time positions with LPS and Transfiguration concurrently until his last day of work for LPS on June 4. After that date, Palmquist's hours at Transfiguration increased to approximately 25 hours per week. Although he had intended to continue his part-time employment with Transfiguration while student teaching in the fall, Palmquist's employment was terminated by Transfiguration on June 26.

On July 1, 1998, Palmquist completed a form which he submitted to the unemployment insurance division of the Nebraska

Department of Labor (Department) entitled "Fact Finding Statement Quit" in which he stated that he had resigned from his employment with LPS effective June 4. In response to a question on the form requesting "details of your reason for quitting," Palmquist stated: "The Lincoln Public School year ended on June 4th. When school started again on August 24th, I would be unable to work because student teaching takes the whole regular work day that I would be at Lincoln High." On the same day, Palmquist also signed another form indicating that he chose not to apply for unemployment benefits at that time. After unsuccessfully seeking other employment, Palmquist applied for unemployment benefits on August 18.

On September 4, 1998, the Department issued a deputy's determination pursuant to Neb. Rev. Stat. § 48-630 (Reissue 1998), finding that Palmquist was entitled to a weekly benefit of $108 without disqualification because the separation from his employment with LPS "was due to a lack of work rather than a voluntary quit." On the same date, the Department issued a notice of monetary determination reflecting maximum benefits payable in the amount of $2,763. Of this amount, $2,562.58 was attributed to Palmquist's employment with LPS and the remaining $200.42 was attributed to his employment with Transfiguration. Pursuant to Neb. Rev. Stat. § 48-624 (Reissue 1998), Palmquist's weekly benefit of $108 was computed on the basis of wages in the amount of $2,642.53 paid to Palmquist by LPS during the second quarter of 1997, which represented the highest total wages received by Palmquist during any quarter of his base period.

LPS appealed the deputy's determination to the Nebraska Appeal Tribunal, asserting that Palmquist had voluntarily resigned his position with LPS and should therefore be disqualified from receiving benefits. The appeal tribunal affirmed the decision of the claims deputy on other grounds, finding that Palmquist's employment with LPS "had ended by its terms." In reaching this determination, the appeal tribunal concluded that § 48-628(8) did not apply because Palmquist indicated he would not be returning to work with LPS for the fall 1998 term, and therefore he did not have "reasonable assurance" of employment under the terms of the statute. The appeal tribunal

concluded that no benefit disqualification could be assessed and that Palmquist was entitled to benefits for the weeks claimed.

LPS appealed this decision to the district court for Lancaster County, asserting that Palmquist voluntarily terminated his employment with LPS to pursue other employment even though employment continued to be available to him from LPS for the next school year, and he should therefore be disqualified from benefits in accordance with § 48-628. In an order filed on May 11, 1999, the district court determined that Palmquist's employment with LPS did not expire by its own terms when his contract ended June 4, 1998, reasoning that if that were the case, there would have been no reason for Palmquist to submit his resignation. The district court concluded that Palmquist had voluntarily left his employment with LPS without good cause and was therefore subject to the benefit disqualification imposed by § 48-628(1)(a). The district court therefore reversed and remanded for further proceedings consistent with its determination. Palmquist perfected this appeal, which we removed to our docket on our motion pursuant to our statutory authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Palmquist contends, restated, that the district court erred in finding that he voluntarily left his employment with LPS without good cause so as to disqualify him from benefits pursuant to § 48-628(1)(a) and, further, that the district court erred in determining that he was disqualified from benefits because Palmquist was not "unemployed" immediately following his last day of employment with LPS due to the fact that at that time, he was still employed by Transfiguration on a part-time basis.

## STANDARD OF REVIEW

In an appeal from the Nebraska Appeal Tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record. *Board of Regents v. Pinzon*, 254 Neb. 145, 575 N.W.2d 365 (1998). An

aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000); *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000); *Kimball v. Nebraska Dept. of Motor Vehicles*, 255 Neb. 430, 586 N.W.2d 439 (1998); *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997). See Neb. Rev. Stat. § 48-640 (Reissue 1998).

 A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Lackawanna Leather Co. v. Nebraska Dept. of Rev., supra*; *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra*; *Father Flanagan's Boys' Home v. Agnew*, 256 Neb. 394, 590 N.W.2d 688 (1999). See Neb. Rev. Stat. § 84-918 (Reissue 1999).

 When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Lackawanna Leather Co. v. Nebraska Dept. of Rev., supra*; *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra*; *Lyman-Richey Corp. v. Cass Cty. Bd. of Equal.*, 258 Neb. 1003, 607 N.W.2d 806 (2000); *Ash Grove Cement Co. v. Cass Cty. Bd. of Equal.*, 258 Neb. 990, 607 N.W.2d 810 (2000); *Constructors, Inc. v. Cass Cty. Bd. of Equal.*, 258 Neb. 866, 606 N.W.2d 786 (2000). An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra*; *Father Flanagan's Boys' Home v. Agnew, supra*. In instances where an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Lackawanna Leather Co. v. Nebraska Dept. of Rev., supra*; *Constructors, Inc. v. Cass Cty. Bd. of Equal., supra*.

## ANALYSIS

■ The district court determined that Palmquist was disqualified from unemployment compensation benefits pursuant to § 48-628(1)(a), which provides that an individual shall be disqualified for benefits "[f]or the week in which he or she has left work voluntarily without good cause . . . and for not less than seven weeks nor more than ten weeks which immediately follow such week" as determined by the Commissioner of Labor. In the context of § 48-628(1)(a), to leave work voluntarily means to sever the employment relationship with the intent not to return to, or to intentionally terminate, the employment. *Gastineau v. Tomahawk Oil Co., Limited,* 211 Neb. 537, 319 N.W.2d 107 (1982).

In order to determine whether the district court erred in determining that Palmquist left his employment with LPS without good cause, we find it necessary, as did the district court, to consider § 48-628(8), which provides that an individual shall be disqualified for unemployment compensation benefits:

> For any week of unemployment if benefits claimed are based on services performed:
>
> (a) In an instructional, research, or principal administrative capacity for an educational institution, if such week commences during the period between two successive academic years or terms . . . if such individual performs such services in the first of such academic years or terms and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

Although this statute does not afford a basis for benefit disqualification in this case, for the reasons discussed below, we agree with the district court that it is pertinent to defining the employment relationship between Palmquist and LPS and resolving the question of whether a disqualification arises under § 48-628(1)(a). As a paraeducator, Palmquist would come within the scope of this statutory provision. See *Birgenheier v. Employment Security,* 28 Wash. App. 911, 627 P.2d 546 (1981) (holding that paraprofessionals working in public schools performed services in instructional capacity for

purposes of unemployment compensation statute). When the 1997-98 school year came to an end, Palmquist's employment with LPS would therefore not have been considered terminated for purposes of unemployment compensation benefits if he had "reasonable assurance" that he would return to his paraeducator position for the fall term of the 1998-99 school year, and he would have been disqualified from receiving unemployment compensation benefits during the intervening weeks under § 48-628(8)(a).

The record contains ample evidence that LPS was at all times willing to employ Palmquist as a paraeducator during the fall term of the 1998-99 school year. However, he foreclosed that possibility by giving notice in May 1998 that he did not intend to return in the fall because his duties at LPS would conflict with his student teaching schedule. In *School Dist. No. 21 v. Ochoa*, 216 Neb. 191, 195, 342 N.W.2d 665, 668 (1984), we held that where a public school teacher gave notice during the spring semester that she would not return to teach in the fall, the intervening summer recess period "did not fall between two years or terms in which she had contracts or a reasonable assurance of employment" so that she was not disqualified from benefits under a prior version of what is now § 48-628(8)(a). It was Palmquist's affirmative act of resignation that terminated his employment relationship with LPS, which otherwise would have continued throughout the summer vacation period between the 1997-98 and the 1998-99 school years. This distinguishes the present case from *Walker Mfg. Co. v. Pogreba*, 210 Neb. 619, 316 N.W.2d 315 (1982), in which we held that a worker who completed a specified period of temporary employment did not voluntarily leave employment when her job ceased to exist. Here, Palmquist's employment relationship with LPS did not cease to exist; rather, he terminated it by resigning.

█ Under § 48-628(1)(a), an employee has "good cause" for voluntarily leaving employment if the employee's decision to leave is prompted by a circumstance which has some justifiably reasonable connection with or relation to the conditions of the employment. *Stackley v. State*, 222 Neb. 767, 386 N.W.2d 884 (1986); *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979). The record supports the district court's determination that

Palmquist voluntarily left his employment with LPS without "good cause" within the context of § 48-628(1)(a).

Palmquist and the Commissioner of Labor argue that even if this determination was correct, Palmquist cannot be disqualified from benefits because he was not "unemployed" within the meaning of Neb. Rev. Stat. § 48-602(24) (Reissue 1998) when his LPS employment ended due to the fact that he was still employed by Transfiguration at that time. This argument is premised upon language in *Gilbert v. Hanlon*, 214 Neb. 676, 335 N.W.2d 548 (1983), in which we rejected the commissioner's contention that the statutory language now codified at § 48-628(1)(a) would impose a benefit disqualification upon a worker, who was laid off from full-time employment under nondisqualifying circumstances, because she voluntarily left concurrent part-time employment on the preceding day. We stated:

> We believe that a more appropriate reading of both the language of § 48-628 and the intent and purpose of the Nebraska Employment Security Law . . . is to interpret § 48-628(a) such that one is disqualified for benefits if, by leaving work voluntarily without good cause, one thereby makes himself or herself "unemployed."

*Gilbert v. Hanlon*, 214 Neb. at 680, 335 N.W.2d at 551. The term "unemployed" is defined by the Employment Security Law to mean

> an individual during any week in which the individual performs no service and with respect to which no wages are payable to the individual or any week of less than full-time work if the wages payable with respect to such week are less than the individual's weekly benefit amount . . . .

§ 48-602(24). Palmquist argues that because his earnings from Transfiguration exceeded his weekly benefit amount, he did not become "unemployed" when he left the employment of LPS and thus could not be disqualified from benefits under § 48-628(1)(a).

As the district court noted, this case is factually distinguishable from *Gilbert* in that it involves two concurrent part-time jobs, as compared to the concurrent full-time and part-time employment considered in *Gilbert*. Moreover, Palmquist's reliance on the above-quoted passage from *Gilbert* ignores the

remainder of the opinion and the articulated rationale for our holding. In *Gilbert*, the worker's weekly benefit and all but $118 of the $2,756 total benefits payable were attributable to the full-time employment which terminated under nondisqualifying circumstances. Nevertheless, the commissioner contended that because the worker voluntarily left her part-time employment without good cause, the worker was disqualified from benefits attributable to either position. Rejecting this "all or nothing interpretation," we reasoned: "While the claimant would not be disqualified under § 48-628(a) from all benefits by reason of quitting one of her multiple concurrent jobs, she would be disqualified for the relevant period from receiving those benefits attributed to the job which she quit." *Gilbert v. Hanlon*, 214 Neb. 676, 683-84, 335 N.W.2d 548, 553 (1983). We stated that because of the existence of a statutory mechanism for crediting and charging the experience accounts of different employers separately, it was "entirely reasonable to interpret 'benefits' under § 48-628(a) in such a way that benefits attributable to separate employers are disqualified separately." *Gilbert v. Hanlon*, 214 Neb. at 684, 335 N.W.2d at 553. We concluded:

> We believe the more reasonable interpretation of § 48-628(a) is that where more than one job is held concurrently by an employee, a disqualifying termination of one job does not thereby automatically disqualify the employee from benefits based upon other jobs against which no disqualification applies. With regard to disqualification for benefits under § 48-628(a), each job should be considered separately and benefits disqualified separately according to the facts relating to the termination of each employment.

*Gilbert v. Hanlon*, 214 Neb. at 685, 335 N.W.2d at 553. We again recognized this principle in *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995).

Although our decision in *Nuss v. Sorensen*, 218 Neb. 703, 358 N.W.2d 752 (1984), involved consecutive rather than concurrent employment, it is nevertheless instructive. In *Nuss*, the worker voluntarily left one job in order to accept a higher-paying job with another employer, from which she was laid off after 5 weeks. We held that an argument based upon *Gilbert* that there should be no disqualification from benefits attributable to the

first job because the worker left to accept another job and was therefore not " 'unemployed' " as a result of her voluntary resignation "overlooks the limited context of our ruling in *Gilbert*," i.e., "the effect of a voluntary ending of a part-time employment on unemployment benefits arising from full-time employment." *Nuss v. Sorensen*, 218 Neb. at 705, 358 N.W.2d at 753. Noting that " 'the Employment Security Law does not purport to grant benefits to employees who leave their work purely voluntarily,' " we held that the worker was disqualified from benefits attributable to the job she left in order to accept other employment. *Id.* at 706, 358 N.W.2d at 753-54, quoting *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979).

In *Gilbert*, we noted the incongruity and unfairness which would result from disqualifying a worker for benefits attributable to full-time employment which she left under nondisqualifying circumstances because of her voluntary resignation from a concurrent part-time job. This case presents the reverse factual circumstance, in that the benefits in question are primarily attributable to the employment which the worker voluntarily left without good cause. It would be no less incongruous and inconsistent with the purposes of the Employment Security Law to remove the statutory disqualification as to these benefits merely because the worker had earnings from other employment at the time of the resignation. Accordingly, as we did in *Gilbert v. Hanlon*, 214 Neb. 676, 335 N.W.2d 548 (1983), we separately consider the circumstances under which each employment was terminated in determining the benefits against which the statutory disqualification should apply. Because Palmquist voluntarily left his employment with LPS without good cause, the disqualification imposed by §. 48-628(1)(a) is applicable to the benefits attributable to that employment.

## CONCLUSION

For the reasons discussed above, we conclude that the judgment of the district court should be affirmed as it is supported by competent evidence and is neither arbitrary, capricious, nor unreasonable.

AFFIRMED.

WRIGHT, J., not participating in the decision.
GERRARD, J., not participating.