FERNANDO LECUONA III, COMMISSIONER OF LABOR, APPELLEE, V. PENNY A. McCORD, APPELLANT.

699 N.W.2d 403

Filed July 22, 2005.   No. S-03-1464.

Chris A. Johnson, of Conway, Pauley & Johnson, P.C., for appellant.

John H. Albin and Thomas A. Ukinski for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Penny A. McCord began receiving unemployment benefits in early 2003. She then began providing business consulting services through a corporation she formed for that purpose. She did not receive a salary for her services. After a random benefits accuracy investigation, the Nebraska Department of Labor (the Department) concluded that McCord had failed to accurately report earnings she received through the corporation and was obligated to repay the unemployment benefits overpayment. The question before this court is whether McCord was "unemployed" for purposes of eligibility for unemployment compensation. See Neb. Rev. Stat. §§ 48-602(27) and 48-625(1) (Reissue 2004).

## FACTUAL AND PROCEDURAL BACKGROUND

McCord, the appellant, filed a claim for unemployment benefits at the end of 2002 and began collecting benefits in January 2003. In February, McCord incorporated Strategic Assessments, Inc. (Strategic), of which she was the president and sole shareholder. On behalf of Strategic, McCord provided consulting services to various companies on an hourly basis.

In March 2003, McCord's unemployment benefits claim was randomly selected by the Department for a "benefits accuracy measurement investigation," through which the Department verifies claims and confirms eligibility for benefits. The review of McCord's claim revealed that she had failed to report earnings to the Department for the weeks ending January 25 through

March 8, 2003. When a Department field representative for quality control contacted McCord, McCord explained that she had been providing services on behalf of her corporation, Strategic, but had not received wages while claiming unemployment benefits, since the corporation was not yet profitable. A notice of determination was issued to McCord, notifying her of the Department's review and ordering her to repay the amount of the alleged benefit overpayment.

McCord filed a request for a hearing with the Nebraska Appeal Tribunal (the Appeal Tribunal), arguing that she had not earned wages in 2003 and, therefore, was not liable for an overpayment of benefits. After a hearing during which the Department's field representative and McCord testified, the Appeal Tribunal agreed, concluding that during the weeks claimed, McCord had received no remuneration for her services on behalf of Strategic. Rather, the Appeal Tribunal determined that Strategic had yet to show a profit and was therefore not able to compensate McCord for her services. The Appeal Tribunal concluded: "[McCord] has no wages payable with respect to weeks claimed and consequently is entitled to benefits for such weeks." Upon a request by the Department to reconsider the decision, the Appeal Tribunal again concluded:

> [McCord] received no remuneration of any kind whether in the form of a salary or dividends. The corporation had not shown a profit in 2003. Since the claimant was not compensated for services performed to Strategic, she did not receive disqualifying wages within the meaning of the Nebraska Employment Security Law.

Fernando Lecuona III, the Commissioner of Labor, petitioned the district court for review of the Appeal Tribunal's decision. The district court concluded that the Appeal Tribunal erred in finding that McCord did not receive wages. The court opined that McCord clearly benefited from her work for Strategic because her living expenses were paid by the corporation and the value of Strategic stock had increased. The court concluded that the administrative judge should have focused on whether McCord's work for Strategic resulted in in-kind benefits sufficient to constitute wages and, if so, the amount of those benefits. The court remanded the matter to the Department for such a determination.

The district court did not discuss the significance of McCord's admission that she had been providing services on behalf of Strategic, nor did the district court discuss whether McCord had been providing services part time or full time during the weeks in question.

McCord now appeals the decision of the district court.

## ASSIGNMENT OF ERROR

McCord claims that the district court erred in concluding that McCord received wages disqualifying her from unemployment benefits and leaving her potentially liable for the overpayment of benefits.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Arndt v. Department of Motor Vehicles, ante* p. 172, 699 N.W.2d 39 (2005). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.* In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *In re Wendland-Reiner Trust,* 267 Neb. 696, 677 N.W.2d 117 (2004).

## ANALYSIS

Before turning to the specific facts of this case, we review the general principles governing eligibility for unemployment benefits. In order to be eligible to receive unemployment compensation benefits, a claimant must be unemployed, as defined in § 48-602(27). See § 48-625(1). Section 48-602(27) provides two definitions of "unemployed" for purposes of determining eligibility for unemployment benefits. An individual is unemployed during any week in which the individual performs no service and with respect to which no wages are payable to the individual (first definition), or, alternatively, an individual is unemployed during any week of less than full-time work if the wages payable with respect to such week are less than the individual's weekly

unemployment benefit amount (second definition). § 48-602(27). In *Board of Regents v. Pinzon*, 254 Neb. 145, 575 N.W.2d 365 (1998), we considered the first definition and held that based upon the plain and ordinary meaning of the statute, two elements must be satisfied to demonstrate unemployment under that definition. First, the individual must not perform any services for the relevant time period; and second, no wages may be payable with respect to that time period.

In this case, the parties focused on whether McCord received wages during the weeks in question, but neither party discussed the element of performing services. Further, the record does not show any previous resolution of that element in prior proceedings. The record before us establishes beyond dispute that based on McCord's own admissions and the findings of fact of the Appeal Tribunal and the district court, McCord performed services for Strategic during the weeks in question. The parties appear to have acted on the mistaken assumption that if McCord was not receiving wages, she was "unemployed" for purposes of eligibility for unemployment benefits. However, based on the plain language of the first definition and our consideration of that language in *Pinzon, supra*, McCord does not satisfy the requirements to be considered unemployed under the first definition, regardless of whether or not she was receiving wages, because she was providing services on behalf of Strategic during the weeks at issue.

Due to this misunderstanding of the statutory requirements, the parties, the Appeal Tribunal, and the district court did not consider whether McCord qualified as "unemployed" under the second definition of § 48-602(27) for any of the relevant weeks. With respect to the second definition, the record in this case suggests that McCord may have provided services full time for some of the weeks in question, but not others. The record does not, however, allow us to determine with specificity whether any nonmonetary benefits McCord received while performing services for Strategic constituted wages and, if so, the amount of any such benefits.

"Wages" are defined in § 48-602(29) as "all remuneration for personal services, including commissions and bonuses, remuneration for personal services paid under a contract of hire, and

the cash value of all remunerations in any medium other than cash." Further, "remuneration" is defined as payment or compensation. Black's Law Dictionary 1322 (8th ed. 2004). From these definitions, it is clear that wages may include noncash benefits under certain circumstances. Thus, we generally agree with the district court's observation that in-kind benefits received in return for services provided may constitute wages for purposes of determining eligibility for unemployment compensation benefits. We have recognized this proposition in other contexts, such as child support cases, in which we have held that the provision of "in-kind" benefits, from an employer or other third party, may be included in a party's income for child support purposes. See, *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004); *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001).

Although our reasoning differs from that of the district court, we agree with the court's ultimate determination that the case should be remanded for a determination of whether McCord received "in-kind" benefits constituting wages within the meaning of § 48-602(29) and, if so, the amount of those benefits. The reasonable cash value of noncash remuneration is to be determined under rules and regulations prescribed by the Commissioner of Labor. § 48-602(29). If the value of McCord's noncash benefits, payable for any given week during which McCord worked less than full time, is exceeded by her weekly unemployment benefit amount, she may be entitled to keep those unemployment benefits.

## CONCLUSION

For the reasons stated, we affirm the order of the district court.

AFFIRMED.