RICHARD A. WADKINS, APPELLANT, V. FERNANDO LECUONA III,
COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEE.
740 N.W.2d 34

Filed October 19, 2007.    No. S-06-1008.

Richard H. Hoch, of Hoch, Funke & Partsch, for appellant.

John H. Albin, Thomas A. Ukinski, and W. Russell Barger, of Nebraska Workforce Development, Department of Labor, Office of Legal Counsel and Administrative Affairs, for appellee.

HEAVICAN, C.J., WRIGHT, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Richard A. Wadkins appeals from an order of the district court, affirming a determination of the Nebraska Appeal Tribunal that Wadkins had received unemployment insurance benefits to which he was not entitled. Wadkins had been laid off and was not performing services for his employer while he was receiving unemployment insurance benefits. But Wadkins was receiving money from his employer for compensatory time (comp time) Wadkins had accrued and for commissions on sales Wadkins had made before he had been laid off. The question presented in this appeal is whether the payments Wadkins received from his employer disqualified him from receiving unemployment insurance benefits under Nebraska's Employment Security Law.[1] We conclude they did not, and reverse the decision of the district court affirming the appeal tribunal's decision ordering Wadkins to repay the benefits he had received.

## BACKGROUND

Wadkins was employed by Americana Shopping Carts, Inc. (Americana), a company that, by its own description, "maintains a nationwide fleet of mobile maintenance units that provide cleaning and repair of shopping carts" and other retail sales equipment. Wadkins was a maintenance supervisor, whose duties involved traveling to Americana's customers to repair their shopping carts. While Wadkins was visiting those customers, he also sold them carts and cart-related products such as

---

[1] Neb. Rev. Stat. §§ 48-601 to 48-671 (Reissue 2004).

spare parts and seatbelts. Wadkins earned a 5-percent commission on such sales.

The "Job Description and Requirements" for Wadkins' position explained that his salary was based on a 260-day work year and that comp time was awarded on a one-to-one basis for each day an employee worked over 260 days. Wadkins' regular pay, not including commissions, was $480.77 per week.

Wadkins was laid off because of a "temporary work slow down," effective December 11, 2004. Wadkins filed a claim for unemployment insurance benefits. During the time period at issue, between January 22 and March 5, 2005, Wadkins was paid unemployment insurance benefits of $288 per week. Wadkins was also being paid by Americana during that period. Americana paid Wadkins $480.77 per week except for the weeks of January 22, during which Wadkins was paid $508.55; January 29, during which Wadkins was paid $537.21; and February 12, during which Wadkins was paid $288.48. Wadkins was apparently recalled to work for Americana on March 8.

Wadkins testified that the money he was paid by Americana after he was laid off was money earned before he was laid off, by working Saturdays and Sundays during the prior year. Wadkins described that time as comp time, and explained that when he was off work, the company paid him for his comp time on a weekly basis. Wadkins asserted that he had not worked or earned wages while he was receiving unemployment insurance benefits. Wadkins also explained that commissions on sales orders were not paid immediately, but were paid when the sales orders were shipped. Wadkins said that Americana's payments for the weeks ending January 22 and January 29, 2005, included some of his sales commissions.

Following a wage audit, the Department of Labor (the Department) concluded that Wadkins' payments from Americana were unreported earnings and that Wadkins had been overpaid $2,016 in unemployment insurance benefits. Wadkins appealed, and the Nebraska Appeal Tribunal affirmed the judgment. The appeal tribunal accepted Wadkins' explanation of the payments, but determined that "[t]he amounts were at the time [Wadkins] received them 'determinable' and[/]or vacation pay,"

and therefore disqualifying compensation that exceeded his weekly benefit amount.[2]

Wadkins appealed the appeal tribunal's determination, pursuant to the Administrative Procedure Act.[3] The district court concluded that comp time payments were considered "earnings" when they became "payable" and found that Wadkins' comp time only became "payable" on a day-to-day basis during his layoff. The district court affirmed the decision of the appeal tribunal.

## ASSIGNMENT OF ERROR

Wadkins assigns that the district court erred in finding that the compensation he received from Americana disqualified him from receiving unemployment insurance benefits.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[5]

## ANALYSIS

The issue in this case is whether Wadkins was, despite receiving compensation from Americana after being laid off,

---

[2] See § 48-602(27).

[3] Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum. Supp. 2006). See § 48-640.

[4] *Chase 3000, Inc. v. Nebraska Pub. Serv. Comm.*, 273 Neb. 133, 728 N.W.2d 560 (2007).

[5] *Ottaco Acceptance, Inc. v. Larkin*, 273 Neb. 765, 733 N.W.2d 539 (2007).

"unemployed" within the meaning of the Employment Security Law. The Employment Security Law defines "unemployed" as

> an individual during any week in which the individual performs no service and with respect to which no wages are payable to the individual or any week of less than full-time work if the wages payable with respect to such week are less than the individual's weekly benefit amount, but shall not include any individual on a leave of absence or on paid vacation leave.[6]

"Paid vacation leave" is a period of time while employed or following separation from employment in which the individual renders no services to the employer but is entitled to receive vacation pay equal to or exceeding his or her base weekly wage.[7] And where a collective bargaining agreement does not allocate vacation pay to a specified period of time during a "period of temporary layoff or plant shutdown," the payment by the employer "will be deemed to be wages . . . in the week or weeks the vacation is actually taken."[8]

■ We have explained that based upon the plain and ordinary meaning of the first definition contained in § 48-602(27), two elements must be satisfied to demonstrate unemployment: First, the individual must not perform any services for the relevant time period; and second, no wages may be payable with respect to that time period.[9] There is no dispute in this case that Wadkins performed no services for Americana after he was laid off. Our inquiry here focuses on whether Wadkins received wages payable with respect to the time after the layoff and whether Wadkins was on "paid vacation leave" within the meaning of the Employment Security Law.

■ On appeal, the parties do not dispute the underlying facts. Given those facts, as a matter of law, Wadkins' comp time payments were not "payable with respect" to the weeks in which

---

[6] § 48-602(27).

[7] § 48-602(18).

[8] See § 48-602(27).

[9] *Lecuona v. McCord,* 270 Neb. 213, 699 N.W.2d 403 (2005); *Vlasic Foods International v. Lecuona,* 260 Neb. 397, 618 N.W.2d 403 (2000); *Board of Regents v. Pinzon,* 254 Neb. 145, 575 N.W.2d 365 (1998).

the payments were made. In *Board of Regents v. Pinzon,*[10] we explained that in making such determinations, the test is not in what week the remuneration is received but in what week it is earned or to which it may reasonably be considered to apply. Thus, in *Pinzon,* we concluded that a university professor whose contract had not been renewed was entitled to unemployment compensation at the conclusion of the 9-month academic term, even though his salary for the year was paid on a 12-month basis.[11] Generally speaking, wages are tied to the week of work and not to the week in which they are paid.[12] In *Pinzon,* the claimant's remaining 3 months of salary were, essentially, deferred wages "payable" when they were earned during the academic year, not when they were received.[13]

The same principles apply here. It is not disputed that Wadkins actually worked the days for which, after the layoff, he was paid. The payments he received are properly allocated to the weeks in which they were earned, before the layoff, not when the payments were received.

The Department contends that *Pinzon* is distinguishable in a number of ways. Most pertinently, the Department argues that Wadkins' comp time payments are the equivalent of "paid vacation leave" within the meaning of the specific statutory exclusion of paid vacation leave from "unemployment."[14]

What little authority there is on the subject of comp time is divided. In *Transportation Dept. v. LIRC,*[15] the Court of Appeals of Wisconsin found that compensatory time off was "similar to a paid vacation" and was included within the definition of the term "wages." That disqualified the claimants from receiving unemployment insurance benefits, according to the court,

---

[10] *Pinzon, supra* note 9.

[11] See *id.*

[12] *Id.*

[13] See *id.*

[14] § 48-602(27).

[15] *Transportation Dept. v. LIRC,* 122 Wis. 2d 358, 360, 361 N.W.2d 722, 723-24 (Wis. App. 1984).

because if the claimants received "wages" while they were not working, they were not unemployed under Wisconsin law.[16]

The Supreme Court of New York, Appellate Division, reached a contrary conclusion in *Matter of Giandomenico*,[17] in which unemployment insurance benefits had been extended to a driver of an ice cream truck who was laid off based on "traded time." Under the employment agreement, a driver would not be paid overtime when it was earned. Instead, the employer would credit the overtime hours to the driver. When business was slack, the least senior drivers would be laid off, but compensated from the fund created by the banked overtime.[18]

The New York appellate court concluded that the driver was unemployed under New York law and entitled to benefits. The court explained:

> The record conclusively demonstrates that the claimant was laid off . . . . His employer concededly had no work for him for a period of seven weeks. Of critical importance is the fact that the money he received from the employer was not wages or remuneration or vacation pay but was his own previously earned money which had been held by the employer for an extended period of time. In short, he had no employment for seven weeks and no remuneration from his employer, and the extension of certain fringe benefits did not change his situation.[19]

We find the New York court's understanding of comp time to be more persuasive, and more consistent with principles of Nebraska law. The Wisconsin court's analysis was focused on whether the claimant's comp time earnings were "wages" under Wisconsin law, and not the time period to which the wages should be applied. As previously explained, the issue under Nebraska law is not whether the payments Wadkins received were "wages"—they were—but with respect to what week those payments are considered "payable." And under Nebraska law,

[16] See *id.*

[17] *Matter of Giandomenico*, 77 A.D.2d 294, 295, 433 N.Y.S.2d 267, 268 (1980).

[18] See *id.*

[19] *Id.* at 295-96, 433 N.Y.S.2d at 268.

for the same reasons articulated by the New York court, the payments Wadkins received were for services rendered before he was laid off and were earned and "payable" when Wadkins was working.

We specifically reject the Department's assertion that comp time, at least under the facts of this case, is "vacation pay" under the Employment Security Law.[20] Vacation pay is generally regarded, not as a gratuity or gift, but as *additional* wages for services performed.[21] It is not in the nature of compensation for the calendar days it covers—it is more like a contracted-for bonus for a whole year's work.[22] By contrast, in this case, Wadkins was being separately and specifically paid for days he had already worked. A "vacation" is also understood to be a respite from active duty, during which activity or work is suspended, purposed for rest, relaxation, and personal pursuits.[23] While Wadkins was not working after he was laid off, the days for which he was being paid—the Saturdays and Sundays he *had* worked—were not "vacation" days within any reasonable understanding of the term.

We have held that the Employment Security Law is to be liberally construed to accomplish its beneficent purpose of paying benefits to involuntarily unemployed workers.[24] And the legislative history of the vacation pay exclusion indicates that the Legislature was concerned with circumstances in which unemployment insurance benefits were being awarded to employees who were on vacation and receiving vacation pay benefits in the regular course of business and who were

---

[20] See § 48-602(18).

[21] See, *In re Wil-Low Cafeterias*, 111 F.2d 429 (2d Cir. 1940); *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 647 P.2d 122, 183 Cal. Rptr. 846 (1982).

[22] *Mathewson v. Westinghouse Elec. Corp.*, 394 Pa. 518, 147 A.2d 409 (1959).

[23] See, *City of Dallas v. Massingill*, 737 S.W.2d 334 (Tex. App. 1987); *Mtr. of Walker (Reader's Digest)*, 28 A.D.2d 256, 284 N.Y.S.2d 584 (1967).

[24] See *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995).

expected to return to work at the end of their vacation leaves.[25] In that context, we are not inclined to construe "vacation pay" to include circumstances in which an individual is admittedly being paid for time he actually worked. Instead, like *Pinzon*, the payments in this case are more akin to deferred compensation, generally understood to be payable with respect to the time it is earned, not the time it is paid.[26]

The Department also suggests that *Pinzon* is distinguishable because that case has been limited to circumstances in which the claimant's employment relationship has been severed.[27] Here, the Department asserts that Wadkins "was still employed by Americana, and still considered to be an employee, although there had been a 'temporary work slow down.'"[28]

We recognize that some courts have distinguished, for various purposes, between a "layoff" and a "discharge" as the terms are commonly understood. The term "layoff" can, depending on the circumstances, denote either a permanent or a temporary termination of employment, although it often implies a temporary cessation of employment with the possibility of recall.[29] But there is little question that a "layoff" involves termination of employment at the employer's will.[30] It differs from a complete termination only in degree.[31] While Wadkins' layoff was temporary, and he was recalled to Americana after 3 months, there is no indication in the record that he voluntarily ceased work. In the absence of a specific statutory provision,[32]

---

[25] See, e.g., Introducer's Statement of Intent, L.B. 608, Business and Labor Committee, 96th Leg., 1st Sess. (Feb. 1, 1999).

[26] See, *Pinzon, supra* note 9. See, also, *Buse v. Mississippi Emp. Sec. Com'n*, 377 So. 2d 600 (Miss. 1979); *Erie Ins. Gr. v. Unemployment Comp. Bd.*, 654 A.2d 105 (Pa. Commw. 1995).

[27] See *Vlasic Foods International, supra* note 9.

[28] Brief for appellee at 4.

[29] See *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031 (10th Cir. 2000).

[30] *Sanders v. Donovan*, 786 F.2d 920 (9th Cir. 1986).

[31] See *State ex rel. Ausburn v. Seattle*, 190 Wash. 222, 67 P.2d 913 (1937).

[32] See, e.g., § 48-628(8) (generally disqualifying employees of educational institutions who have "reasonable assurance" of reemployment in subsequent academic terms); § 48-628(9) (disqualifying professional athletes

the *possibility* of recall to work is not pertinent, so long as no services are performed for, nor wages payable with respect to, the relevant time period.[33] A "layoff," despite the possibility of recall, is considered to be involuntary "unemployment" within the meaning of unemployment insurance benefit laws.[34]

The Department also asserts that under the Social Security Act,[35] the "period" during which wages are paid refers to the financial quarter or calendar year during which the employer should report the wages,[36] and notes that Americana reported Wadkins' comp time wages when they were paid, after Wadkins was laid off. But when wages are reportable for Social Security purposes does not define the period with respect to which they are "payable" within the meaning of Nebraska's Employment Security Law.[37] That, as we have already explained, is established by when the wages were earned, not when they were actually paid or reported by the employer for tax purposes.[38]

Finally, we note that our decision is based solely on the appropriate attribution of Wadkins' comp time payments, and we do not consider the money Wadkins received for sales commissions. Commissions are included in the definition of "wages,"[39] but regardless of when the commissions were "payable," the amount did not exceed one-half of Wadkins' weekly benefit amount, and would not have affected Wadkins' eligibility for his full weekly benefit amount.[40] Therefore, our conclusion with respect to Wadkins' comp time is dispositive of this appeal, and we need not consider his commissions.

---

during off-season who have "reasonable assurance" of reemployment in following season).

[33] See § 48-602(27).

[34] See *GMC v Erves*, 399 Mich. 241, 249 N.W.2d 41 (1976). Cf. *Goodyear Tire & Rubber Co. v. Employment Security Board of Review*, 205 Kan. 279, 469 P.2d 263 (1970).

[35] 42 U.S.C. § 301 et seq. (2000 & Supp. IV 2004).

[36] § 405(c)(1)(D).

[37] See § 48-602(27).

[38] See *Pinzon, supra* note 9.

[39] See § 48-602(29).

[40] See § 48-625(1). See, also, *McCord, supra* note 9.

## CONCLUSION

The payments Wadkins received after being laid off were wages for comp time Wadkins had earned by working extra days before he was laid off, and were "payable" within the meaning of the Employment Security Law with respect to the weeks they were earned, not the weeks during which they were paid. The payments for Wadkins' comp time were deferred compensation for time Wadkins had actually worked and were not "vacation pay" within the meaning of the Employment Security Law.

The district court erred in concluding that Wadkins had been overpaid. The judgment of the district court is reversed, and the cause is remanded to the district court with directions to reverse the determination of the appeals tribunal affirming the decision of the Department.

REVERSED AND REMANDED WITH DIRECTIONS.

Connolly, J., participating on briefs.